GARY S. FERGUS (Cal. St. Bar No. 095318)
FERGUS, A LAW OFFICE
595 Market Street
Suite 2430
San Francisco, CA 94105
Phone: (415) 537-9030
Fax: (415) 537-9038
E-mail: GFergus@ferguslegal.com

RAYMOND P. NIRO
PAUL K. VICKREY (*pro hac vice application pending*)
OLIVIA T. LUK (*pro hac vice application pending*)
GABRIEL I. OPATKEN (*pro hac vice application pending*)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, Illinois 60602
Phone: (312) 236-0733
Fax: (312) 236-3137
E-mail: rniro@nshn.com
E-mail: vickrey@nshn.com
E-mail: oluk@nshn.com
E-mail: gopatken@nshn.com

**Attorneys for Plaintiff QIANG WANG**

FILED

2012 OCT 30 P 3:10

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| QIANG WANG, | Case No. 12 5579 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| PALO ALTO NETWORKS, INC., NIR ZUK AND FENGMIN GONG, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Wang v. Palo Alto Networks, Inc., *et al.*, Case No. _____
Complaint

Plaintiff Qiang Wang ("Wang"), in support of his Complaint against Defendants Palo Alto Networks, Inc., Nir Zuk and Fengmin Gong, alleges as follows:

## JURISDICTION, VENUE AND NATURE OF ACTION

1.    This is an action to correct inventorship of U.S. Patent No. 8,009,566 B2 ("the '566 patent"). The '566 patent is based on inventions first conceived by Wang and disclosed to a currently named inventor of the '566 patent. Wang also asserts a claim for trade secret misappropriation under the California Uniform Trade Secrets Act, Cal. Civil Code §§3426-3426.11, and an alternative claim for breach of confidence.

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338, 1367, 2201, 2202 and 35 U.S.C. §256.

3.    Venue is appropriate in this district under 28 U.S.C. §1391(b).

## THE PARTIES

4.    Wang is a resident of this district.

5.    Palo Alto Networks, Inc. ("PAN") is a Delaware Corporation headquartered in Santa Clara, California.

6.    Nir Zuk ("Zuk") is a resident of this district. He is a co-founder of PAN, and currently is PAN's Chief Technical Officer.

7.    Fengmin Gong ("Gong") is a resident of this district. He is a co-founder of PAN and was PAN's Chief Scientist.

## BACKGROUND

8.    Wang is an engineer with significant experience in fast search algorithm, chip architecture and design, and network system and security. His academic experience includes serving as Visiting Fellow and Lecturer in Telecommunications at the University of South Wales in Australia and Beijing University of Posts and Telecommunications in China, respectively, before 1990. His industrial experience includes leading chip and system architecture and design efforts, encompassing many security functions, for companies in Silicon Valley, USA, since 1994. He received his Master's Degree in Electrical Engineering from Beijing University of

2

1  Posts and Telecommunications in 1986, and spent two years at Stanford University in the Ph.D.

2  program in Computer Vision and Fast Search Algorithms from 1992 to 1994.

3        9.     From 2001 through 2003, Wang conceived of new firewall technologies. These

4  technologies included novel methods for content-based signature scanning (i.e., pattern

5  matching); stateful sub-port (i.e., signature-based) application recognition; heuristic analysis for

6  unknown applications; heuristic protocol anomaly; traffic (i.e., statistical) anomaly analyses;

7  automatic signature generation for unknown threats; fine-grain modular (i.e., multi-mode)

8  classification based on headers and content including using Application-ID, Content-ID and User-

9  ID; and single-pass parallel architecture for integrated securities and services, which is stream-

10  based (vs. file-based) and on a purpose-built platform for high-performance, fine-grained control,

11  easy management, low latency and costs. On November 7, 2003, Wang applied for a patent on a

12  revolutionary fast content scan technology, the foundation of these technologies, and that

13  application eventually issued as U.S. Patent No. 7,454,418 ("the '418 patent") on November 18,

14  2008. The '418 patent application was first published on October 20, 2008.

15        10.    From April of 2003 to December of 2003, Wang worked full-time on a business

16  plan to commercialize his firewall technologies through a venture he named GoldShield

17  Networks, which was never incorporated.

18        11.    In February of 2005, Wang entered into a joint venture with Fengmin Gong to

19  promote and commercialize Wang's inventions and business ideas. Gong was at that time Chief

20  Scientist and Director of Intrusion Detection Technologies at McAfee, Inc. ("McAfee"); he told

21  Wang that he possessed the requisite engineering management and security product delivery

22  experience, networking, and business acumen to help Wang make GoldShield Networks a

23  success. Wang invited Gong to be a co-founder of the venture, and Gong accepted that invitation.

24  Thereafter, in discussions with Wang and third parties, Gong identified himself as a "co-founder"

25  of the venture, and Wang's "partner."

26        12.    At Gong's direction, the name of the venture was changed from GoldShield

27  Networks to ForeSecurity, and Gong thereafter identified himself as ForeSecurity's Co-Founder

28

Wang v. Palo Alto Networks, Inc., *et al.*, Case No. _____
Complaint

1 | and Vice President of Engineering. Wang and Gong had numerous (approximately thirty),
2 | lengthy face-to-face meetings and scores of telephone conversations throughout 2005, during
3 | which Gong developed a thorough understanding of all of the technologies invented by Wang and
4 | Wang's detailed business ideas. Gong also served as Wang's business advisor, and advised Wang
5 | as to how they should jointly proceed with the business.
6 |     13.    In conversations with Wang and potential funding sources, Gong referenced the
7 | technology conceived by Wang as "our product" and "our technology." He also described Wang's
8 | technology as "revolutionary" and "truly disruptive." Gong explained to one of his colleagues
9 | that the technology underlying ForeSecurity was a "content protection and compliance-
10 | enforcement solution that will revolutionize how content-borne threat protection, content access
11 | control and quality-assured content delivery is done; a solution to enable enterprises and service
12 | providers to effectively stop all the epdemic-style *(sic)* attacks, on the first sight, from reaching
13 | any critical resources and from spreading across the network, to remove unwanted content from
14 | their networks, and to prevent all the unauthorized content accesses; and a solution to relieve the
15 | users of the extremely-difficult choice between complete threat protection and negative impact on
16 | business efficiency."
17 |     14.    Wang informed Gong that his inventions and business ideas were to remain
18 | confidential and proprietary, and the written materials describing his invention and business ideas
19 | were so labeled. Gong agreed to maintain such information in confidence. In his dealings with
20 | possible funding sources, Gong identified the written materials associated with ForeSecurity as
21 | confidential and proprietary.
22 |     15.    Wang and Gong also agreed upon ownership shares in the venture, which shares
23 | were to be documented upon ForeSecurity's incorporation. Wang's share was two-thirds of their
24 | total share; Gong's was one-third of their total share. The disparity in ownership was based on the
25 | respective contributions which Gong and Wang were bringing and would bring to the venture:
26 | Wang brought the technology and main business ideas, and would oversee overall technology and

4

hardware and chip development; Gong brought business acumen, credibility in the market, and would oversee security software and system development.

16. On June 9, 2005, Wang and Gong met with Nir Zuk, who had left Juniper Networks and was looking to get his own one-person company, PAN, off the ground. The purpose of the meeting was to see if it made sense for the parties to join forces. Though the technical discussion at the meeting was at a very high level, Wang understood that PAN and ForeSecurity were pursuing different technologies and different business ideas: ForeSecurity focused on content-based, user-based and application-based integrated security emphasizing fine-grained control and easy management, while PAN was focused on better conventional firewall and virtual private networks for wide area network links. Also at that meeting, Wang and Gong told Zuk that it was Wang who was responsible for the technology at the heart of the ForeSecurity venture, and that Wang had a patent application pending on the foundation of that technology.

17. A few days later, Wang and Zuk had breakfast together. In the course of that meeting, Zuk told Wang that (1) Wang's patent application was useless without access to sufficient resources, and (2) he did not care whether he infringes anyone else's patents. Wang's conversations with Zuk went no further.

18. On or about August 30, 2005, Gong told Wang that his noncompetition agreement with McAfee precluded further public involvement in the development and promotion of ForeSecurity until April 1, 2006. Nonetheless Gong and Wang continued to have their face-to-face meetings through October 31, 2005 and their discussions over email and telephone until January 4, 2006. Furthermore, the same issue was discussed between Gong and Wang as early as April of 2005. Both Gong and Wang understood that this would not be a serious impediment and they continued to work together thereafter.

19. On or about January 10, 2006, Gong informed Wang that due to lay-offs at McAfee, he had just joined Nir Zuk at PAN. Gong further explained that he had to quickly land a job to feed his family. Wang wished Gong well and thereafter abandoned any further attempts to found the venture for security systems. Wang later learned that Gong's statements were false.

5

1    20.    On July 20, 2012, PAN conducted an initial public offering, and the success of that
2 IPO prompted several reports and articles about PAN's success story based on its differential
3 product features and unique technologies in the news media. By reading those articles, Wang
4 discovered that those differential product features and unique technologies were not only different
5 from Zuk's and Gong's explanation of PAN's business model and product features, but also that
6 PAN's technology seemingly replicated Wang's product features and technologies. Accordingly,
7 he began researching PAN to learn more. During his research, Wang discovered the existence of
8 the '566 patent (issued August 30, 2011), which Gong, Zuk and two other PAN employees had
9 applied for on June 26, 2006. In the original application, Zuk and Gong were listed as the first
10 and second inventors. PAN owns the '566 patent.

11    21.    Wang also discovered statements made by Zuk and PAN in 2012 in the lawsuit
12 Juniper Networks, Inc. v. Palo Networks, Inc., C.A. No. 11-1258-SLR (D. Del.) indicating that
13 (1) PAN's detailed business plan and architectural schema were created well after his June, 2005
14 meetings with Zuk, and (2) Gong had played a key role in crafting both. Though a declaration of
15 Zuk was filed under seal, a PAN pleading (Doc. No. 12) citing that declaration indicates: (1)
16 Gong joined with Zuk as a "founder" of PAN in perhaps as early as July of 2005; (2) PAN
17 funding proposals dated November and December of 2005 expressly identified Gong as PAN's
18 Chief Scientist and co-founder and (3) Gong was specifically identified as one of four persons
19 who developed a "detailed business plan" and the "architectural schema" for PAN's "next
20 generation" firewall technology.

21                         **FIRST CLAIM FOR RELIEF**
                          **(FOR DECLARATORY JUDGMENT**
22                 **AGAINST PAN TO CORRECT INVENTORSHIP)**

23    1-21.    Plaintiff realleges and incorporates Paragraphs 1 through 21 above as Paragraphs 1
24 through 21 of Count I.

25    22.    The invention described and claimed in the '566 patent relates to methods and
26 apparatus for classifying and processing data packets in a computer network, including multi-
27 mode classification based on header and content including stateful signature-based application

28                                      6

1 recognition, content-based protocol decoding, extraction and pattern matching, and interactions

2 among the multi-mode classification and the content-based protocol decoding, extraction and

3 pattern matching.

4       23.    Wang disclosed the novel limitations of the claims of the '566 patent to Gong in

5 2005 both orally and in writing, including the limitations relating to multi-mode classification

6 based on header and content including stateful signature-based application recognition, content-

7 based protocol decoding, extraction and pattern matching, and interactions among the multi-mode

8 classification and the content-based protocol decoding, extraction and pattern matching.

9       24.    In 2005, Gong described Wang's inventions as "revolutionary" and "truly

10 disruptive," well before his purported conception of the claims of the '566 patent.

11       25.    At a minimum, Wang made substantial contributions to, and is a co-inventor (if

12 not the sole inventor) of, claims 1-17 of the '566 patent.

13       26.    An actual controversy exists between Wang and PAN with respect to the

14 inventorship and ownership of the '566 patent.

15       WHEREFORE, Wang prays for relief as set forth below.

16                  **SECOND CLAIM FOR RELIEF**
**(FOR TRADE SECRET MISAPPROPRIATION**
17              **AGAINST PAN, ZUK AND GONG)**

18       1-26.   Plaintiff realleges and incorporates Paragraphs 1 through 26 above as Paragraphs 1

19 through 26 of Count II.

20       27.    Wang's technologies, including novel methods for content-based signature

21 scanning (i.e., pattern matching); stateful sub-port (i.e., signature-based) application recognition;

22 heuristic analysis for unknown applications; heuristic protocol anomaly; traffic (i.e., statistical)

23 anomaly analyses; automatic signature generation for unknown threats; fine-grain modular (i.e.,

24 multi-mode) classification based on headers and content including using Application-ID, Content-

25 ID and User-ID; and single-pass parallel architecture for integrated securities and services, which

26 is stream-based (vs. file-based) and on a purpose-built platform for high-performance, fine-

27 grained control, easy management, low latency and costs constitute trade secrets under Cal.

28

7

Civil Code §3426.1. The trade secrets were not generally known to the public or to other persons who could obtain economic value from their disclosure or use and they were not known to Gong before Wang's disclosure. Wang took reasonable efforts to maintain secrecy of the trade secrets.

28.    Wang and Gong had a confidential relationship, which Gong voluntarily assumed, and Gong acquired the trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

29.    Zuk encouraged Gong to leave his venture with Wang and join PAN as a co-founder. Thereafter, Zuk put Gong in charge of designing the architectural schema for what PAN calls its next generation firewall technology, knowing that Gong had access to Wang's inventions. Zuk also placed Gong in charge of filing a patent application on that architecture. As officers and co-founders of PAN, both Gong and Zuk knew that Gong was using Wang's trade secrets without Wang's consent, and that Gong had acquired those trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

30.    PAN's "next generation firewall technology," including content-based protocol decoding, extraction and pattern matching, stateful signature-based application recognition, heuristic analysis for unknown applications and heuristic, protocol anomaly, and statistical anomaly analyses and automatic signature generation for unknown threats, fine-grain multi-mode classification based on headers and content using Application-ID, Content-ID and User-ID, single-pass parallel architecture for integrated securities and services, which is stream-based (vs. file-based) and on a purpose-built platform for high-performance, fine-grained control, easy management, and low latency and costs, and its '566 patent, are based at least in part on (if not completely based on) Wang's trade secrets.

31.    The actions of Gong, Zuk and PAN constitute willful misappropriation of trade secrets.

32.    Wang first learned of the trade secret misappropriation in August of 2012 through the exercise of reasonable diligence.

WHEREFORE, Wang prays for relief as set forth below.

Wang v. Palo Alto Networks, Inc., et al., Case No. _____
Complaint

eg

**THIRD CLAIM FOR RELIEF**
**(ALTERNATIVE CLAIM FOR BREACH OF**
**CONFIDENCE AGAINST PAN AND GONG)**

1-32.    Plaintiff realleges and incorporates Paragraphs 1 through 32 above as Paragraphs 1 through 32 of Count III.

33.    A confidential relationship existed between Wang and Gong, which relationship Gong voluntarily assumed.

34.    In the course of that relationship, Wang disclosed confidential information to Gong, who had a duty to not disclose or use that information, regardless of whether the information is protected as a trade secret.

35.    To the extent that any of the information which Wang disclosed to Gong is ultimately deemed to not be protected as a trade secret, Gong's (and hence PAN's) use of that information constitutes a breach of confidence.

36.    Wang has been damaged by such breach of confidence.

37.    Wang first learned of the facts underlying his breach of confidence claim in August of 2012 through the exercise of reasonable diligence.

WHEREFORE, Wang prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Wang respectfully requests entry of judgment in his favor and against PAN, Zuk and Gong as follows:

(a) Declaring that Wang is a true and proper inventor (if not the sole inventor) of the '566 patent;

(b) Directing the Commissioner of Patents and Trademarks to correct the error in named inventors of the '566 patent and to issue a certificate naming Wang as an inventor (if not the sole inventor) on the '566 patent;

(c) Declaring that Wang is an owner (if not the sole owner) of '566 patent;

(d) Awarding Wang compensatory damages including at least Defendants' unjust enrichment from their misappropriation of trade secrets or their breach of confidence;

9

1    (e) Awarding Wang exemplary damages;

2    (f) Awarding Wang his reasonable attorneys' fees and costs; and

3    (g) Awarding Wang such other relief as the Court deems just and necessary.

4                              **JURY DEMAND**

5    Wang demands a trial by jury on all issues so triable.

6    Dated: October 30, 2012          Respectfully submitted,

7                              By: _____

8                                   Gary S. Fergus
                                    FERGUS, A LAW OFFICE
9                                   595 Market Street, Suite 2430
                                    San Francisco, California 94105
10                                  Phone: (415) 537-9032
                                    Fax: (415) 537-9038
11                                  E-mail: gfergus@ferguslegal.com

12                                  Raymond P. Niro
13                                  Paul K. Vickrey (*pro hac vice application pending*)
                                    Olivia T. Luk (*pro hac vice application pending*)
14                                  Gabriel I. Opatken (*pro hac vice application
                                    pending*)
15                                  NIRO, HALLER & NIRO
                                    181 W. Madison, Suite 4600
16                                  Chicago, Illinois 60602
                                    Phone: (312) 236-0733
17                                  Fax: (312) 236-3137
18                                  E-mail: rniro@nshn.com
                                    E-mail: Vickrey@nshn.com
19                                  E-mail: oluk@nshn.com
                                    E-mail: gopatken@nshn.com
20
21                                  Attorneys for Plaintiff Qiang Wang

22

23

24

25

26

27

28
                                    10

Wang v. Palo Alto Networks, Inc., *et al.*, Case No. _____
Complaint