GARY S. FERGUS, Cal. Bar No. 095318
FERGUS, A LAW OFFICE
595 Market Street, Ste. 2430
San Francisco, California 94115
Tel:    (415) 537-9032
Fax:    (415) 537-9038
E-mail:  gfergus@ferguslegal.com

RAYMOND P. NIRO
PAUL K. VICKREY (appearance pro hac vice)
DAVID J. SHEIKH (appearance pro hac vice)
OLIVIA T. LUK (appearance pro hac vice)
GABRIEL I. OPATKEN (appearance pro hac vice)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, Illinois  60602
Tel:    (312) 236-0733
Fax:    (312) 236-3137
E-mail: rniro@nshn.com
E-mail: vickrey@nshn.com
E-mail: sheikh@nshn.com
E-mail: oluk@nshn.com
E-mail: gopatken@nshn.com

*Attorneys for Plaintiff Qiang Wang*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| QIANG WANG,<br><br>                    Plaintiff,<br><br>        v.<br><br>PALO ALTO NETWORKS, INC.,<br>NIR ZUK and FENGMIN GONG,<br><br>                    Defendants. | Case No. C12-05579 WHA<br><br>Honorable Judge William H. Alsup<br><br>**PLAINTIFF QIANG WANG'S MOTION TO STRIKE EXPERT REPORT OF VERN PAXSON AND BELATED PRODUCTION OF ASSOCIATED DOCUMENTS**<br>Hearing<br>Date:  May 22, 2014<br>Time: 8:00 am<br>Place: Courtroom 8<br>          450 Golden Gate Ave., 19th Floor<br>          San Francisco, California 94102<br>Action Filed: October 30, 2012<br>Judge: Honorable William Alsup |

**I.      INTRODUCTION**

In the days before the March 25, 2014 close of fact discovery, Defendants – Palo Alto Networks, Inc. ("PAN"), Nir Zuk ("Zuk") and Fengmin Gong ("Gong") – produced well over 6,000 pages of documents, including key alleged "prior art"[1] upon which their expert relies heavily. As one glaring example, on March 19, 2014, Defendants produced two "native files" that, when unzipped, revealed an additional 85 subfolders with thousands of files totaling over 27 MB of data (most of which cannot be reviewed without special software). These thousands of files appear to relate to the "Bro System" allegedly devised by Defendants' expert, Mr. Vern Paxson.

Counsel for PAN confirmed that these documents related to Defendants' expert report and were not previously produced, though they originally stated otherwise[2]. Counsel did not provide any reason for why these documents were not previously produced or identified despite (a) Defendants' obligations under Rule 26(a) of the Federal Rules of Civil Procedure, (b) Defendants' representations in their Initial Disclosures that they would make such documents available, and (c) Plaintiff's Requests for Production of Documents Nos. 59 and 60 to PAN (served on August 29, 2013) and Interrogatories Nos. 5 and 6 to Zuk (served on January 2, 2014) – each of which clearly contemplated the production and identification of documents relating to alleged prior art.

On March 25, 2014, Defendants served their Expert Report of Vern Paxson Regarding Invalidity of Asserted Patents and Ready Ascertainability of Alleged Trade Secrets (the "Paxson Report"). (Ex. C). The approximately 200-page Paxson Report relies heavily on documents and source code belatedly produced in this litigation despite Defendants' obligations under Rules 26,

---

[1] The term "prior art" is used herein to describe documents produced that Defendants appear to use to either (a) invalidate the patents in suit or (b) argue that the trade secrets were generally known.
[2] Wang counsel intended to address the March 19, 2014 production with the Court during the March 20 hearing. However, just before the start of that hearing, PAN counsel represented that the March 19 production was merely previously produced documents which PAN was producing again because Defendant Nir Zuk had reviewed them to prepare for his Rule 30(b)(6) deposition which was to proceed on March 21, 2014. (Ex. A, Declaration of David J. Sheikh). PAN counsel expanded its description of the March 19 production in an email much later in the day on March 20. (Ex. B).

WANG V. PALO ALTO NETWORKS, ET AL. – CASE NO. C12-05579 WHA – PLAINTIFF QIANG WANG'S MOTION TO STRIKE EXPERT REPORT OF VERN PAXSON AND BELATED PRODUCTION OF ASSOCIATED DOCUMENTS

- 1 -

33 and 34 of the Federal Rules of Civil Procedure. Moreover, Defendants were clearly aware of such documents well in advance of their production, especially the documents related to the Bro System authored by Mr. Paxson – indeed, that appears to be a major motivation for PAN's desire to retain him as an expert.

It appears instead that PAN's timing of the production of these documents (and other documents discussed below) was the result of a conscious strategy to keep Plaintiff Qiang Wang ("Wang") in the dark about the bases for Defendants' defenses until the close of fact discovery. Accordingly, Plaintiff respectfully requests the Court to strike the Paxson Report and preclude Defendants' reliance on all belatedly-produced documents associated therewith.

## II.   STATEMENT OF FACTS

### A.   Defendants' Initial Disclosures

On February 7, 2013, the Court entered a Case Management Order requiring: "All initial disclosures under FRCP 26 must be completed by **FEBRUARY 8, 2013**, on pain of preclusion, including full and faithful compliance with FRCP 26(a)(1)(A)(iii)." (Dkt. No. 43). In accordance with that Order, Defendants PAN and Zuk provided their Supplemental Initial Disclosures on February 8, 2013 and stated in relevant part:

> Defendants [PAN and Zuk] identify the following categories of documents (which includes electronically stored information and tangible things) pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii). These documents in Defendants' possession, custody, or control will be produced [by] Defendants' agents, Durie Tangri LLP.
>
> 1. Documents relating to the technology at issue in the case (and/or the development thereof).
>
> 2. ***Documents relating to whether the information Plaintiff allegedly disclosed constitute trade secrets***.

(Exhibit D at § II; emphasis added). Defendants have not supplemented their Initial Disclosures since Wang amended his Complaint to include patent infringement; however, Rule 26(a) clearly contemplates that Defendants should have, "without awaiting a discovery request, provide[d] to the other parties: (ii) a copy – or a description by category and location – of all documents… that

1  the disclosing party… may use to support its claims or defenses." Fed.R.Civ. P. 26(a)(1)(A)(ii).

2  Moreover, this Court's Standing Order provides (¶ 26):

> Apart from discovery, Rule 26 requires certain automatic disclosures and requires them to be made in a timely manner. Under Rule 37(c), untimely-disclosed materials may not be used at trial or on summary judgment unless the delay in disclosure is "harmless" or unless "substantial justification" for the delay is shown.

### B.  Wang's Discovery Requests

On February 25, 2013, immediately after the opening of fact discovery, Plaintiff served his First Set of Requests for Production of Documents and Things to Defendant Palo Alto Networks requesting, among other things:

> 10. All documents constituting or relating to communications with Gong about any actual or potential PAN products.
>
> \* \* \*
>
> 21. All documents describing the status, features, functionality and/or architecture of any actual or potential PAN products as of June 1, 2005.
>
> 22. All documents describing the status, features, functionality and/or architecture of all actual or potential PAN products as of December 31, 2007.
>
> 23. All documents describing the features, functionality, architecture and/or operation of PAN's Next Generation Firewall products, including, but not limited to, PA-4020, PA-4050, PA-5060, PA_5050, and PA-5020.

(Exhibit E).

On August 29, 2013, Plaintiff served his Second Set of Requests for Production to PAN requesting, among other things:

> 34. The documents used by PAN to develop source code for any "Content Inspection" Algorithm." If You have already produced some or all such documents, You may identify those Documents by production number rather than re-produce them.
>
> \* \* \*
>
> 59. All documents and things supporting or pertaining to any claim, contention or affirmative defense asserted by PAN with respect to Mr. Wang's claim for patent infringement.
>
> 60. All alleged prior art to the Patents in Suit.

(Exhibit F).

In addition to a typical "non-search term" search, counsel for PAN stated that they would "use the following terms to search the following custodians' [including Zuk's] email and hard drive information: <u>Search Terms</u> … Gong AND any one of the following terms prior to 12/31/2007: signature w/5 match, signature w/5 scan, signature w/5 search,… pattern w/5 match,… 'hash table',… [and] 'flow table….'" (Exhibit G). Counsel for PAN has also affirmatively represented, at various times throughout this case, that it has completed its production of documents (though it has not done so since the recent belated productions). (See, e.g., Exhibits H, I, and J).

### C. Defendants' Belated Productions of Documents and Things

Despite the foregoing, Defendants PAN and Zuk produced (and Defendant Gong relies upon) several thousand pages of documents and source code clearly encompassed within Rule 26(a), PAN's and Zuk's representations in its Initial Disclosures, and Wang's discovery requests. (See Exhibits K, L, M, N, P and Q). In addition, Defendant Zuk provided supplemental responses to interrogatories that specifically incorporate documents not previously produced but clearly sought in early 2013. (See Exhibit O). Below is a table setting forth Defendants' recent provides tactics in conjunction with the Paxson Report:

| DATE | EVENT |
|---|---|
| 03.07.2014 | PAN produces PANWANG0000284048-PANWANG0000285044. (See Ex. K)<br>• This production appears to include 997 pages of alleged "prior art." (See Opatken Decl. at ¶ 12).<br>   o These should have been provided in accordance with FRCP 26 and in response to Wang's Requests for Production Nos. 59 and 60 and Wang's Interrogatories Nos. 5 and 6. |
| 03.14.2014 | PAN produces PANWANG0000285045-PANWANG0000285740 and PANWANG0000285742-PANWANG0000286201. (See Ex. L).<br>• This production appears to include 1,156 pages of alleged "prior art." (See Opatken Decl. at ¶ 13).<br>   o These should have been provided in accordance with FRCP 26 and in response to Wang's Requests for Production Nos. 59 and 60 and identified in response to Wang's Interrogatories Nos. 5 and 6. |

| DATE | EVENT |
|---|---|
| 03.19.2014 | PAN produces PANWANG0000286202-PANWANG0000287672. (See Ex. M).<br>• This production appears to include 1,469 pages of alleged "prior art". (See Opatken Decl. at ¶ 14).<br>  o These should have been provided in accordance with FRCP 26 and in response to Wang's Requests for Production Nos. 59 and 60 and identified in response to Wang's Interrogatories Nos. 5 and 6.<br>• It also includes two "native files" (PANWANG0000287671 and PANWANG0000287672) that, when opened, comprise two *folders* of source code containing 85 subfolders, 27 MB of data, and thousands of files. These appear to relate to the "Bro System," alleged "prior art" relied upon throughout the Paxson Report. (See Opatken Decl. at ¶ 15).<br>  o These should have been provided in accordance with FRCP 26 and in response to Wang's Requests for Production Nos. 59 and 60 and identified in response to Wang's Interrogatories Nos. 5 and 6. |
| 03.19.2014 | PAN produces PANWANG_SC_00003578-PANWANG_SC_00003750. (See Ex. M).<br>• This production appears to include 173 pages of PAN source code. (See Opatken Decl. at ¶ 16).<br>  o These should have been produced in accordance with Wang's Requests for Production Nos. 21, 22, 23 and 34. |
| 03.20.2014 | PAN produces PANWANG_SC_00003751-PANWANG_SC_00005379. (See Ex. N).<br>• This production appears to include 1,629 pages of PAN source code. (See Opatken Decl. at ¶ 17).<br>  o These should have been produced in accordance with Wang's Requests for Production Nos. 10, 21, 22, 23 and 34.<br>  o Moreover, at least PAN_SC_00003751-PAN_SC_00003864 should have been uncovered by PAN when it ran its proposed search terms through its custodians' email and hard drives because it includes "Gong" AND signature w/5 scan, signature w/5 match, signature w/5 search, pattern w/5 match, "hash table" and "flow table" – all terms that PAN said it was using for its search. |
| 03.20.2014 | Zuk provides a supplemental response to Interrogatory No. 2. (Ex. O).<br>• This supplementation identifies, for the first time, documents produced as PANWANG_SC_00003578-PANWANG_SC_00003750 and PANWANG_SC_00003865-PANWANG_SC_00005377. (See Opatken Decl. at ¶ 18).<br>  o These documents should have been produced in response to document requests as described above and the interrogatory responses should have been supplemented in a prompt manner after Wang served the original interrogatories on 02.25.2013, and after PAN's counsel stated that they would supplement. (See Opatken Decl. at ¶ 32; Exhibit CC). |

WANG V. PALO ALTO NETWORKS, ET AL. – CASE NO. C12-05579 WHA – PLAINTIFF QIANG WANG'S MOTION TO STRIKE EXPERT REPORT OF VERN PAXSON AND BELATED PRODUCTION OF ASSOCIATED DOCUMENTS

- 5 -

| DATE | EVENT |
|---|---|
| 03.24.2014 | PAN produces PANWANG0000287673-PANWANG0000288033. (See Ex. P).<br>• This production appears to include 361 pages of alleged "prior art". (See Opatken Decl. at ¶ 19).<br>    o These should have been provided in accordance with FRCP 26 and in response to Wang's Requests for Production Nos. 59 and 60 and identified in response to Wang's Interrogatories Nos. 5 and 6. |
| 03.25.2014 | PAN produces PANWANG0000288101-0000288167 and PANWANG0000288169-PANWANG0000288728. (See Ex. Q).<br>• This production appears to include 627 pages of alleged "prior art". (See Opatken Decl. at ¶ 20).<br>    o These should have been provided in accordance with FRCP 26 and in response to Wang's Requests for Production Nos. 59 and 60 and identified in response to Wang's Interrogatories Nos. 5 and 6. |

### D.  Defendants' Submission of the Paxson Report

On March 25, 2014, Defendants served the Paxson Report. While the Paxson Report does not include any specific exhibits of materials relied upon, it specifically cites the following alleged "prior art" documents produced on or after March 7, 2014:

- PANWANG0000284321-PANWANG0000284400 (produced 03.07.2014) (Cited in Ex. C at 16);
- PANWANG0000284464-PANWANG0000284485 (produced 03.07.2014) (Id.);
- PANWANG0000284530-PANWANG0000284539 (produced 03.07.2014) (Id.);
- PANWANG0000285365 (produced 03.14.2014) (Id. at 190);
- PANWANG0000285418-PANWANG0000285421 (produced 03.14.2014) (Id. at 195);
- PANWANG0000285431 (produced 03.14.2014) (Id.);
- PANWANG0000285459-PANWANG0000285467 (produced 03.14.2014) (Id. at 192);
- PANWANG0000285470-PANWANG0000285472 (produced 03.14.2014) (Id. at 195);
- PANWANG0000285484-PANWANG0000285485 (produced 03.14.2014) (Id. at 191, 195);
- PANWANG0000285488-PANWANG0000285489 (produced 03.14.2014) (Id. at 191);
- PANWANG0000285498-PANWANG0000285501 (produced 03.14.2014) (Id.);
- PANWANG0000285612 (produced 03.14.2014) (Id. at 154);
- PANWANG0000285656-PANWANG0000285657 (produced 03.14.2014) (Id.);
- PANWANG0000286214-PANWANG0000286229 (produced 03.19.2014) (Id. at 16);
- PANWANG0000287671-PANWANG0000287672 (produced 03.19.2014) (Id. at 17); and
- PANWANG0000288023-PANWANG0000288033 (produced 03.24.2014) (Id. at 16).

Moreover, the Paxson Report relies heavily on several alleged "prior art" references that were produced, at least in part, on or after March 7, 2014:

- The '143 Patent
  - PANWANG0000287301 (produced 03.19.2014) and
  - PANWANG0000287331 (produced 03.19.2014)
- Cho
  - PANWANG0000285077 (produced 03.14.2014)
- Pryor
  - PANWANG0000285165 (produced 03.14.2014)
  - PANWANG0000285175 (produced 03.14.2014) and
  - PANWANG0000287282 (produced 03.19.2014)
- Karp-Rabin
  - PANWANG0000284415 (produced 03.07.2014)
  - PANWANG0000285045 (produced 03.14.2014)
  - PANWANG0000285121 (produced 03.14.2014)
  - PANWANG0000286258 (produced 03.19.2014)
  - PANWANG0000287282 (produced 03.19.2014) and
  - PANWANG0000287372 (produced 03.19.2014)
- Bro System
  - PANWANG0000284464 (produced 03.07.2014)
  - PANWANG0000287671 (produced 03.19.2014) and
  - PANWANG0000287672 (produced 03.19.2014)
- The '789 Patent
  - PANWANG0000284109 (produced 03.07.2014)
- Netscreen (aka Netscreen Device and Netscreen OS)
  - PANWANG0000285329 (produced 03.14.2014) and
  - PANWANG0000285471 (produced 03.14.2014)
- The '744 Patent
  - PANWANG0000285712 (produced 03.14.2014)

Again, the Paxson Report is vague in its reliance to these alleged "prior art" references; rather than attaching specific exhibits that can be considered within their four corners, the Paxson Report provides general discussion about these references with only occasional citation to production numbers. As identified above, the Paxson Report specifically relies upon certain production ranges belatedly produced in this litigation – those references should be stricken. The Paxson Report also vaguely identifies each of the references immediately above – to the extent Defendants intend to rely upon the materials produced after March 7, 2014 (whether in the Paxson Report or during summary judgment or trial), those specific references should be stricken as well.

## III.     ARGUMENT

The Paxson Report should be stricken and Defendants should be precluded from relying on the belatedly-produced documents because Defendants strategic decision to produce key documents at the last minute was designed for the sole purpose of prejudicing Wang. The fact that Defendants were deliberately seeking to keep Wang in the dark is evident from their responses to Wang's Interrogatory No. 5. Wang's Interrogatory No. 5 to Zuk (and analogous Interrogatory No. 6 to Gong) requests Defendants to "Identify any and all documents that tend to support the contention that Wang's Trade Secrets were generally known to the public or to other persons who could obtain economic value from their disclosure or use." (Exhibit R; see also Ex. S). Zuk originally responded on February 3, 2014 by identifying 13,159 pages of documents: PANWANG0000207336-207337 (produced 07.11.2013); PANWANG0000260968-261452 (produced 09.23.2013); and PANWANG0000271376-284047 (produced 02.03.2014). (See Exhibit T; see also Exhibit U (Gong's Responses incorporating the Zuk Responses by reference)).

Unprompted, on March 20, 2014, Zuk supplemented his previous Responses by identifying another 2,638 "pages" of documents: PANWANG0000284321-285044 (produced 03.07.2014); PANWANG0000285202-285740 (produced 03.14.2014); PANWANG0000285742-286201 (produced 03.14.2014); PANWANG0000286214-286229 (produced 03.19.2014); PANWANG0000286439-286441 (produced 03.19.2014); PANWANG0000286478-287371 (produced 03.19.2014); and PANWANG0000287671-287672 (produced 03.19.2014). (See Exhibit V; see also Exhibit W (Gong's Supplemental Responses incorporating the Zuk Supplemental Responses by reference)).

Zuk's Supplemental Responses not only rely on belatedly-produced documents, they also rely on documents that were well known at least in early January 2014 and are purposely deceptive. For example, the "documents" produced as PANWANG0000287671-287672 would appear, at first glance, to comprise a mere two pages of material. That is not the case. Rather, these "two pages" are actually compressed folders that, when opened, reveal 85 subfolders with

WANG V. PALO ALTO NETWORKS, ET AL. – CASE NO. C12-05579 WHA – PLAINTIFF QIANG WANG'S MOTION TO STRIKE EXPERT REPORT OF VERN PAXSON AND BELATED PRODUCTION OF ASSOCIATED DOCUMENTS

\- 8 -

thousands of documents totaling more than 27 MB of data relating to the "Bro System" – all produced on the eve of fact discovery close and the 30(b)(6) deposition of PAN. (See Opatken Decl. at ¶ 15). Why Defendants produced the documents this way is left to speculation but it is worth noting that other source code was recently produced in a manner that revealed the accurate number of pages associated with the production. (See, e.g., Exhibits M and N). Perhaps more astonishing than Defendants' attempt to veil the true magnitude of their belated production is the fact that they knew about these documents well before the production date. In fact, their expert, Mr. Paxson, states in his report: "[The] Bro [System] is a network intrusion detection system that I designed and first deployed in the 1990s. Since its initial release it has been distributed for free in an 'open source' fashion." (Ex. C at ¶ 53). Mr. Paxson goes on: "Since initially designing Bro, I have continued to work extensively on its development, often in conjunction with Ph.D. students I have supervised." (Id. at ¶ 54).

It is not unreasonable to assume that Defendants selected Mr. Paxson as their expert, at least in large part, because of his relationship with the Bro System – especially in light of the fact that the Bro System is used extensively throughout the Paxson Report and, arguably, the most relied upon reference by Defendants. Interestingly, Mr. Paxson signed the Acknowledgement and Agreement to be Bound in accordance with the Parties' Protective Order on January 7, 2014. (Ex. X). Thus, Defendants were in a position to produce these documents at least as early as January 7, 2014, while several months remained in fact discovery (during which time depositions were taken of Mr. Zuk and Mr. Gong). Plaintiff submits that, given the immediately preceding holiday and Defendants' obvious choice to use Mr. Paxson because of his relationship to the Bro System, Defendants were likely in discussions with Mr. Paxson and aware of the Bro System well before 2014.

Defendants' calculated stratagem to disadvantage Wang and litigate by ambush is undeniable. As such, Plaintiff requests that the Paxson Report be stricken and that Defendants be precluded from relying on documents belatedly produced in this action.

### A. Legal Standard

"The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 11-cv-01846 LHK, 2013 U.S. Dist. LEXIS, *22 (N.D. Cal. Nov. 12, 2013); citing *Navellier v. Sletten*, 262 F.3d 923, 941-42 (9th Cir. 2001) (imposing limits on the parties' presentation of evidence is within "the broad discretion that the district court has to manage the trial"). Moreover, "district courts have discretion to exclude evidence when a party acts in bad faith or prejudices its adversary by deliberately delaying, or wholly failing, to respond to contention interrogatories." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of… unfair prejudice...." Fed.R.Evid. 403. This Court's Standing Order states (¶15):

> Except for good cause, no item shall be received as case-in-chief evidence if the proponent has failed to produce it in response to a reasonable and proper discovery request covering the item, regardless of whether any discovery motion was made. A burden or overbreadth or similar objection shall not be a valid reason for withholding requested materials actually known to counsel or a party representative responsible for the conduct of the litigation.

"It is improper on appeal to disturb a district court's trial management, absent a clear abuse of judicial discretion." *Abbott Labs v. Brennan*, 952 F.2d 1346, 1351 (Fed. Cir. 1991). "A trial court has broad discretionary authority in managing the litigation before it…." *Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 899 F.2d 1171, 1177 (Fed. Cir. 1990) (per curiam).

WANG V. PALO ALTO NETWORKS, ET AL. – CASE NO. C12-05579 WHA – PLAINTIFF QIANG WANG'S MOTION TO STRIKE EXPERT REPORT OF VERN PAXSON AND BELATED PRODUCTION OF ASSOCIATED DOCUMENTS

- 10 -

**B.     Defendants' Reliance on Certain Patent Prior Art Should be Precluded**

In a circumstance similar to that presented here, this Court has held that citations to prior art in an expert report regarding patent infringement were stricken when it was undisputed that they were not included in the defendants' invalidity contentions. *Life Techs. Corp. v. Biosearch Techs., Inc.*, Case No. 12-cv-00852 WHA, 2012 U.S. Dist. LEXIS 132478, *5-7 (N.D. Cal. Sept. 17, 2012). This Court reached its ruling based on the Patent Local Rules, which "require detailed disclosure of a party's patent invalidity contentions." *Id*. at *4. In this case, Defendants produced numerous documents relating to alleged patent prior art well after their invalidity contentions were required by the Court and immediately prior to the close of fact discovery.

Specifically, Defendants produced PANWANG0000287301-287330 and PANWANG0000287331-287371, which purportedly relate to the '143 Patent, on March 19, 2014. (See Opatken Decl. at ¶ 14). Likewise, Defendants produced PANWANG0000285077-285089, which purportedly relates to the Cho reference, on March 14, 2014. (See id. at ¶ 13). Similarly, Defendants produced PANWANG0000285165-285174, PANWANG0000285175-286187 and PANWANG0000287282-287300, which purportedly relate to the Pryor reference, on March 14 and March 19, 2014. (See id. at ¶¶ 13 and 14). Finally, Defendants produced PANWANG0000284415-284433, PANWANG0000285045-285062, PANWANG0000285121-285137, PANWANG0000286258-286274, PANWANG0000287282-287300, and PANWANG0000287372-287671, which purportedly relate to the Karp-Rabin reference, on March 7, March 14 and March 19, 2014. (See id. at ¶¶ 12, 13 and 14).

Because each of these documents was produced well after Defendants' deadline to provide invalidity contentions and well after Defendants certified that they had completed production of documents (including requests for production specifically seeking alleged patent prior art), citation to those references should be stricken from the Paxson Report and Defendants should be precluded from relying on the documents for any purpose.

**C.      Defendants' Reliance on Trade Secret "Prior Art" Should be Precluded**

Defendants' discovery failures do not stop at patent prior art alone. Defendants also certified in their Supplemental Rule 26 Initial Disclosures on February 8, 2013 that "Documents relating to whether the information Plaintiff allegedly disclosed constitute trade secrets" "will be produced [by] Defendants' agents, Durie Tangri LLP." (Exhibit D).  Thus, Plaintiff was reasonable in relying on Defendants' representation that they had produced all documents supporting their contention that Wang's trade secrets were generally known. In view of Defendants' production of over 270,000 pages of documents, Plaintiff served interrogatories on Zuk and Gong specifically requesting each of them to identify the documents that they contended would support their position that Wang's trade secrets were generally known. (See Exhibits R and S). Defendants initially responded by identifying 13,159 pages of documents on February 3, 2014. (Exhibits T and U). Despite the massive identification already provided and, more importantly, the Court's statements at the March 20, 2014 hearing limiting Defendants' ability to rely on numerous "prior art" references, Defendants produced several thousand more pages of documents and native files and identified a significant portion of said production as responsive to these interrogatories. (Exhibits V and W).

In this instance, it is clear that Defendants acted in bad faith <u>and</u> prejudiced Plaintiff by deliberately delaying its thorough response to Wang's contention interrogatories seeking identification of the documents that Defendants certified they had produced. *See Woods*, 692 F.3d at 1280. While Defendants produced thousands of pages of regular documents, two "pages" of that production best demonstrate Defendants' deceptive and bad faith tactics. Specifically, Defendants belatedly produced (and belatedly identified in response to the contention interrogatories) documents bearing production numbers PANWANG0000286671 and PANWANG0000286672. (See Exhibit M). These are not regular single-page documents; rather, each of these "pages" is actually a native file that, when opened, reveals thousands of pages of source code files (many of which are not readily discernible without the proper software) within dozens of subfolders. Importantly, these files relate to the "Bro System," the very same system

1 designed by Mr. Paxson, author of the Paxson Report setting forth Defendants' position with
2 respect to the alleged general availability of Wang's trade secrets. (See Exhibit C at ¶ 53).

3 While Defendants confirmed via email that these "[d]ocuments relat[e] to defendants'
4 expert report regarding the ready ascertainability of Mr. Wang's alleged trade secrets" and "that
5 these documents were not previously produced" (see Exhibit B), Defendants fail to explain why.
6 This is especially perplexing given that Defendants identified Mr. Paxson, the supposed author
7 of the "Bro System," as their expert on January 10, 2014 and attached the Acknowledgement and
8 Agreement to be Bound that was signed on January 7, 2014. Responses to the contention
9 interrogatories were not due until early February, yet Defendants failed to produce or identify
10 them. Instead, Defendants waited until the last week of fact discovery, after individual
11 depositions were completed, immediately before the 30(b)(6) deposition of PAN, and
12 immediately before expert reports were to be served.

13 Plaintiff has been prejudiced by the belated production of several other alleged "prior art"
14 references beyond the "Bro System" including: the '143 Patent, the Pryor reference, the '789
15 Patent, the Netscreen references and the '744 Patent. Accordingly, Defendants should be
16 precluded from relying upon any of the belatedly-produced or -identified documents and portions
17 of the Paxson Report relying on the same should be stricken.

**D. Defendants' Belated Production of Other Documents Apparently Unrelated to Invalidity or General Ascertainability of Trade Secrets Should be Stricken**

20 While a significant portion of the belatedly-produced and -identified documents relate to
21 alleged "prior art," several thousand other documents were produced that include source code
22 from PAN. While Plaintiff has not had the opportunity to thoroughly vet these documents to
23 determine their relationship to the claims or defenses in this case, Plaintiff believes that
24 Defendants should be precluded from relying upon said documents in light of their litigation
25 tactics.

26 As one example, Defendants produced on March 20, 2014, a source code file labeled
27 PANWANG_SC_00005378-00005379 and titled "cia-removal." (Exhibit Y). The file appears to

be dated "2013/10/07 17:56:49." (Id.). This is troublesome not only because of the delayed production of source code potentially relevant to this case but, also, because the document appears to describe the deletion of source code files in October of 2013, the month before PAN made the source code available for inspection pursuant to the protective order, (see Exhibit Z), and one month after Plaintiff made its request for source code, (see Exhibit AA). Given that PAN only just produced this document on March 20, Plaintiff has not had an adequate opportunity to review the material; nonetheless, serious questions arise as to the adequacy of previous source code productions and the potential loss of evidence relevant to this case.

As another example, Defendants' production includes a source code file produced as PANWANG_SC_00003751-00003864. (Exhibit BB). This document should have been produced for one undeniable reason: it contains the terms "Gong" AND signature w/5 scan, signature w/5 match, signature w/5 search, pattern w/5 match, "hash table" and "flow table" – all terms that PAN said it was using for its search disjunctively.

Defendants have not explained why this was produced on the eve of fact discovery close and the 30(b)(6) deposition of PAN. Moreover, Defendants certified their completion of document production in September of 2013 despite the lack of production of this document and the several thousand other pages of materials produced in October, November, December, January, February and March.

**IV.   CONCLUSION**

Defendants' recent production and identification of documents appears to be the result of a strategic calculation to cause as much prejudice and harm as possible at the close of fact discovery. For the foregoing reasons, Wang respectfully requests that this Court preclude Defendants from relying in any way upon the documents produced on or after March 7, 2014, including by striking the portions of the Paxson Report that rely upon said documents.

Respectfully submitted,

*/s/ Paul K. Vickrey*
Raymond P. Niro
Paul K. Vickrey (*Pro Hac Vice*)
David J. Sheikh (*Pro Hac Vice)*
Gabriel I. Opatken (*Pro Hac Vice*)
Olivia T. Luk (*Pro Hac Vice*)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, Illinois  60602
Tel:     (312) 236-0733
Fax:    (312) 236-3137
E-mail: rniro@nshn.com
E-mail: vickrey@nshn.com
E-mail: sheikh@nshn.com
E-mail: oluk@nshn.com
E-mail: gopatken@nshn.com

Gary S. Fergus, Cal. Bar No. 095318
FERGUS, A LAW OFFICE
595 Market Street, Ste. 2430
San Francisco, California 94115
Tel:     (415) 537-9032
Fax:    (415) 537-9038
E-mail:  gfergus@ferguslegal.com

***Attorneys for Plaintiff Qiang Wang***

WANG V. PALO ALTO NETWORKS, ET AL. – CASE NO. C12-05579 WHA – PLAINTIFF QIANG WANG'S MOTION TO STRIKE EXPERT REPORT OF VERN PAXSON AND BELATED PRODUCTION OF ASSOCIATED DOCUMENTS

- 15 -

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 4, 2014 the foregoing

**PLAINTIFF QIANG WANG'S MOTION TO STRIKE EXPERT REPORT OF VERN PAXSON AND BELATED PRODUCTION OF ASSOCIATED DOCUMENTS**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

Ragesh K. Tangri
Daralyn J. Durie
Ryan M. Kent
Sonali D. Maitra
Laura E. Miller
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
Tel:     (415) 362-6666
Fax:    (415) 236-6300
rtangri@durietangri.com
ddurie@durietangri.com
rkent@durietangri.com
smaitra@durietangri.com
lmiller@durietangri.com

*Attorneys for Palo Alto Networks, Inc. and Nir Zuk*

Carol A. Igoe
Jonathan A. Patchen
Stephen E. Taylor
TAYLOR & COMPANY LAW OFFICES LLP
One Ferry Building, Suite 355
San Francisco, CA  94111
Tel:     (415) 788-8200
Fax:    (415) 788-8208
jpatchen@tcolaw.com
cigoe@tcolaw.com
staylor@tcolaw.com

*Attorneys for Defendant Fengmin Gong*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

*/s/ Gabriel I. Opatken*
Attorneys for Plaintiff