1   DURIE TANGRI LLP
    DARALYN J. DURIE (SBN 169825)
2   ddurie@durietangri.com
    RAGESH K. TANGRI (SBN 159477)
3   rtangri@durietangri.com
    RYAN M. KENT (SBN 220441)
4   rkent@durietangri.com
    LAURA E. MILLER (SBN 271713)
5   lmiller@durietangri.com
    ZAC A. COX (SBN 283535)
6   zcox@durietangri.com
    217 Leidesdorff Street
7   San Francisco, CA 94111
    Telephone:   415-362-6666
8   Facsimile:    415-236-6300

9   Attorneys for Defendants
    PALO ALTO NETWORKS, INC. and
10  NIR ZUK

11  JONATHAN A. PATCHEN (SBN 237346)
    CAROL A. IGOE (SBN 267673)
12  TAYLOR & COMPANY LAW OFFICES, LLP
    One Ferry Building, Suite 355
13  San Francisco, California 94111
    Telephone: (415) 788 8200
14  Facsimile: (415) 788 8208
    E-mail: staylor@tcolaw.com
15  E-mail: jpatchen@tcolaw.com
    E-mail: cigoe@tcolaw.com
16
    Attorneys for Defendant
17  FENGMIN GONG

18                  IN THE UNITED STATES DISTRICT COURT

19              FOR THE NORTHERN DISTRICT OF CALIFORNIA

20                      SAN FRANCISCO DIVISION

21  QIANG WANG,                            Case No. 3:12-cv-05579-WHA

22                  Plaintiff,             **DEFENDANTS' OPPOSITION TO
                                           PLAINTIFF QIANG WANG'S MOTION TO
23      v.                                 STRIKE EXPERT REPORT OF VERN
                                           PAXSON AND BELATED PRODUCTION OF
24  PALO ALTO NETWORKS, INC., NIR ZUK,     ASSOCIATED DOCUMENTS**
    and FENGMIN GONG,
25                                         Date:    May 22, 2014
                    Defendants.            Time:    8:00 a.m.
26                                         Ctrm:    8 – 19th Floor
                                           Judge:   Honorable William H. Alsup
27

28

1   I.      INTRODUCTION

2           Following the Court's Order on April 11, 2014, the vast majority of Wang's motion to strike is

3   now moot.  The only remaining issue relates to five patent prior art documents, each of which PAN first

4   produced with its Invalidity Contentions pursuant to Local Patent Rules 3-3 and 3-4 on September 23,

5   2013.  The documents in question are four journal articles and one United States patent.  Wang refused to

6   stipulate to the authenticity of these documents and that they were publicly available prior to Wang's

7   priority date.  As a result, PAN reproduced a copy of each journal article from either the Stanford

8   University or UC Davis library including the library date stamps (along with an authenticating

9   declaration from the relevant librarian) and a certified copy of the patent from the United States Patent

10  and Trademark Office.   Wang now moves to strike these duplicate copies.

11  II.     FACTUAL BACKGROUND

12          A.      PAN's Invalidity Contentions and Dr. Paxson's Invalidity Report.

13          On August 7, 2013, Plaintiff Qiang Wang was granted leave to amend his complaint to include

14  patent infringement claims against PAN based on his two patents, U.S. Patent Nos. 7,454,418 (the "'418

15  patent") and 7,870,161 (the "'161 patent).  Pursuant to Local Patent Rule 3-3 and 3-4 and the Court's

16  August 7, 2013 Order (Dkt. No. 85), PAN served its Invalidity Contentions and produced the associated

17  prior art on September 23, 2013.  Declaration of Laura E. Miller In Support of Defendant's Opposition to

18  Plaintiff Qiang Wang's Motion to Strike ("Miller Decl.") ¶¶ 2–3, Exs. 1–2.  In those contentions, PAN

19  identified and provided detailed claim charts for the following anticipatory references:

20      • Jonathan D. Cohen, Hardware-Assisted Algorithm for Full-Text Large Dictionary String
          Matching Using N-Gram Hashing, 34(4) Information Processing & Management 443–64 (1998)
21        ("Cohen");

22      • Method and Apparatus for Data Packet Pattern Matching, U.S. Patent No. 7,134,143 (filed Feb. 4,
          2003) ("the '143 patent"); and,
23
        • Young H. Cho, Shiva Navab, and William H. Mangione-Smith, Specialized Hardware for Deep
24        Network Packet Filtering, 2438 Field-Programmable Logic & Applications 452–61 (Sept. 2–4,
          2002) ("Cho").
25

26  Miller Decl. ¶ 2, Ex. 1 at 2–3.  In addition, PAN identified and provided claim charts for various

27  obviousness combinations, including two other references:

28      • Pryor, D. V., Thistle, M. R., and Shirazi, N., Text Searching On Splash 2, Proceedings of the
          IEEE Workshop on FPGAs for Custom Computing Machines, 172-177 (1993) ("Pryor"); and,

1

1      • Karp, R. M., & Rabin, M. O., Efficient Randomized Pattern-Matching Algorithms, 31 (2) IBM
         Journal of Research and Development 249–260 (March 1987) ("Karp-Rabin").

2

3    *Id.* at 3–12.  Copies of these five references were produced on September 23, 2013, pursuant to Local

4    Patent Rule 3-4.  Miller Decl. ¶ 3, Ex. 2.

5         On March 25, 2014, Defendants served the opening expert report of Dr. Paxson regarding the

6    invalidity of the asserted patents.  In his report, Dr. Paxson relied on these same three anticipatory

7    references and also referenced the additional two references to show the obviousness of the asserted

8    claims.  Miller Decl. ¶ 4, Ex. 3 at 26–28.   Contrary to Wang's repeated assertion that "the Paxson Report

9    is vague in its reliance to [sic] these alleged 'prior art' references," Motion at 7, these references were

10   clearly identified in Dr. Paxson's report with publication information, and corresponding production

11   numbers were provided in Appendix A to his report.  *Id.* at 26–28 & Appendix A.

12        **B.      PAN Produced Additional Copies of the Prior Art References in Its Invalidity
                    Contentions.**

13

14        On February 28, 2014, PAN requested that Wang stipulate that various journal articles were

15   publicly available before the priority date of Wang's patents, so as to avoid burdening third parties with

16   authenticating declarations.  Miller Decl. ¶ 5, Ex. 4.  This request included the Cohen, Cho, Pryor, and

17   Karp-Rabin references.  Having received no response from Wang's counsel, PAN reminded them of the

18   request two weeks later.  *Id.*  Wang's counsel then responded that they were not in a position to stipulate

19   on the dates, but agreed to consider additional material establishing the dates of publication.  *Id.*  In

20   response, PAN produced copies of the Cohen, Cho, Pryor, and Karp-Rabin references, among others,

21   obtained from the Stanford University and University of California, Davis Libraries.  Miller Decl. ¶ 6,

22   Ex. 5.  These copies were identical in substance to the previously produced versions, but also included

23   additional evidence of public availability, including library date stamps.[1]  Miller Decl. ¶¶ 7–14, Exs. 6–

24   13.  PAN provided Wang's counsel with a chart identifying the date stamp information and the specific

25   Bates ranges for the Stanford and UC Davis copies.  Miller Decl. ¶ 5, Ex. 4.  As is self-evident from

26

27   [1] In addition to the journal articles obtained from the Stanford and UC Davis libraries, PAN also
     produced a certified copy of the '143 patent obtained from the U.S. Patent and Trademark Office.  Miller
28   Decl. ¶¶ 6, 15–16, Exs. 5, 14–15.

1    these documents, each was published well before the priority date of Wang's patents, November 7, 2003.

2          Wang's counsel responded that they would not review the copies (with the library date stamps)

3    until after opening expert reports were served and thus continued to refuse to stipulate to that these

4    documents were publicly available. *Id.* PAN proceeded to obtain and produce declarations from

5    librarians at the Stanford and UC Davis libraries, within the fact discovery period, establishing that the

6    journal articles at issue were publicly available before the priority date of the asserted patents. Miller

7    Decl. ¶ 17, Ex. 16.

8          PAN again reminded Wang that it had produced additional copies of these prior art references on

9    March 20, 2014, in response to Wang's counsel inquiring whether certain documents had been

10   previously produced in the litigation. *See* Declaration of Gabriel I. Opatken in Support of Plaintiff Qiang

11   Wang's Motion to Strike ("Opatken Decl.") ¶ 3, Ex. B. PAN explained that while certain documents had

12   not previously been produced,[2] the production included "[d]uplicate copies of certain prior art references

13   produced by PAN on September 23, 2013, pursuant to Local Patent Rule 3-4. These copies include

14   patent documents from the PTO, and references obtained from Stanford Library." Opatken Decl. ¶ 3, Ex.

15   B.

16         **C.    Wang Filed the Present Motion Without Seeking a Meet and Confer.**

17         On Friday, April 4, 2014, Wang filed the present motion without seeking a meet and confer with

18   Defendants "for the purpose of attempting to resolve all disputed issues," as required by Local Rule 37-

19   1.[3] On Sunday, April 6, 2014, Defendants notified Wang that the motion was improper and requested

20   that it be withdrawn so that the parties could discuss narrowing the issues in dispute. Miller Decl. ¶ 18,

21   Ex. 17. PAN specifically noted that the patent prior art references identified in the motion had first been

22   produced on September 23, 2013. *Id.* PAN also provided a chart mapping the previously produced

23   copies of the documents to those cited in Appendix A of the Paxson report. *Id.*

24

25   _____

26   [2] The documents that had not been previously produced are no longer at issue in this case in light of the
     Court's April 11, 2014 Order (Dkt. No. 171).

27   [3] Local Rule 37-1(a) states that "[t]he Court will not entertain a request or a motion to resolve a
     disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred

28   for the purpose of attempting to resolve all disputed issues."

3

DEFENDANTS' OPP TO PLAINTIFF'S MOTION TO STRIKE PAXSON EXPERT REPORT AND
BELATED PRODUCTION OF ASSOCIATED DOCS / CASE NO. 3:12-CV-05579-WHA

1    Wang responded on April 7, 2014, providing no justification for not seeking a meet and confer

2    prior to filing the motion, and refusing to withdraw the motion unless Defendants agreed to all of the

3    relief sought. *Id.*  With regard to the additional copies of the five prior art references analyzed in Dr.

4    Paxson's report, Wang's only justification for proceeding with the motion was that the duplicate copies

5    were produced in the last month of fact discovery, notwithstanding that they were "similar (or nearly

6    identical)" to the references identified in PAN's Invalidity Contentions and produced on September 23,

7    2013. *Id.*

8    **D.    Dr. Kraft Testified That He Had Not Yet Reviewed the Prior Art References Four
         Days Prior to Submitting His April 8, 2014 Rebuttal Report Regarding Invalidity.**

9

10    Dr. Kraft was deposed on the same day that this motion was filed, April 4, 2014.[4]  Hours before

11    Wang filed his motion, Dr. Kraft testified that he had not yet studied the three anticipatory prior art

12    references discussed in Dr. Paxson's report, despite acknowledging that PAN had identified them "a long

13    time ago" in PAN's Invalidity Contentions.  *See* Miller Decl. ¶ 19, Ex. 18 at 162:5–164:10.

14    Specifically, Dr. Kraft testified that he had not yet had an opportunity to study the Cho reference:

15        Q.  When was it that you first read the Cho reference?

16        A.  I don't know if I've read the whole thing. I saw that it was on the list of things that
            you submitted or sent to us a long time ago with numerous documents, that this is
17            one of them.

18        Q.  You have not yet had an opportunity to study it, is that correct?

19        A.  No.

20        Q.  I take it therefore, as you sit here today, you don't have any opinions about the
            relationship between the Wang patents and the Cho reference, is that correct?
21
          A.  That's correct.
22

23    *Id.* at 162:5–13, 17–21.  Dr. Kraft was similarly unfamiliar with the '143 patent:

24        Q.  Are you familiar with U.S. patent 7,134,143?

25        A.  This is also sitting on my desk.

26

27    ───────────

[4] Opening expert reports, including Dr. Kraft's report regarding infringement of the asserted patents, were served on March 25, 2014.  Rebuttal expert reports were served on April 8, 2014.  Defendants deposed Dr. Kraft in the interim in order to aid in the preparation of the rebuttal non-infringement expert
28    report of Dr. Mitzenmacher.

1

2

Q. Have you read it?

A. I've glanced through it.

3

4

Q. Do you have any opinions as you sit here today as to the relationship between the Wang patents and the '143 patent?

5

A. Not today.

6

Q. When did you first learn about the '143 patent?

7

8

A. It may have been on the earlier list, but I certainly learned about it from your expert's report just recently.  I don't remember if it was on the original list or not.  It might have been.

9

10

*Id.* at 162:22–163:9.  Dr. Kraft also testified that he had only "glanced" at the Cohen reference:

11

Q. I'll direct your attention to what's been marked as Exhibit 20.  Are you familiar with Exhibit 20?

12

13

A. Again, the same answer.  This is one of them that was specified by your expert, and it was also mentioned in a hearing before the Court, I think at the tutorial and it's sitting on my desk.

14

Q. Have you read it?

15

A. I've glanced through it.

16

Q. As you sit here today, have you formed any opinions about the relationship between the Wang patents and the Cohen paper that is Exhibit 20?

17

A. I have not.

18

19

Q. How did the Cohen paper first come to your attention?

20

A. I -- Well, for sure Cohen was in the original list of documents, I remember that.  It was in the chart you prepared.

21

22

Q. When you say the original list of documents, you are referring to Palo Alto Networks' invalidity contentions?

A. That's correct.

23

24

*Id.* at 163:14–164:10.  Just four days later, on April 8, 2014, Dr. Kraft submitted his rebuttal report on the

25

validity of the asserted patents addressing these three anticipatory references.

26

///

27

///

28

///

DEFENDANTS' OPP TO PLAINTIFF'S MOTION TO STRIKE PAXSON EXPERT REPORT AND BELATED PRODUCTION OF ASSOCIATED DOCS / CASE NO. 3:12-CV-05579-WHA

1   **III.   ARGUMENT**

2       **A.   Documents Relating to Defendants' Trade Secret Defenses.**

3       On April 11, 2014, the Court granted Defendants' motion for summary judgment on Wang's

4   trade secret misappropriation claims under the statute of limitations.  Dkt. No. 171.  With the exception

5   of the five references identified above, the rest of the motion relates to Defendants' defenses against

6   Wang's trade secret claims.  As such, the motion should be denied as moot as to all but the five patent

7   prior art references analyzed in Dr. Paxson's report which are discussed in Section III.B.[5]

8       **B.   Documents Relating to PAN's Invalidity Defense.**

9       There is no dispute that each of the five disputed references were timely disclosed in PAN's

10   Invalidity Contentions.  *See, e.g.*, Miller Decl. ¶ 2, Ex. 1 at 1–6 and 9–11.  Wang's reliance on *Life*

11   *Technologies Corp. v. Biosearch Technologies, Inc.*, Case No. 12-cv-00852 WHA, 2012 U.S. Dist.

12   LEXIS 132478 (N.D. Cal. Sept. 17, 2012) is entirely misplaced.  Although Wang states that the

13   "circumstance [was] similar to that presented here," the defendants in *Life Technologies* sought to rely

14   upon prior art references in their expert report that were ***absent*** from their invalidity contentions.  PAN

15   not only identified the disputed references in its Invalidity Contentions, it provided detailed claim charts

16   as required by Local Patent Rule 3-3.

17       Instead, Wang's only objection is that additional ***copies*** of these references were produced in

18   March 2014 after Wang refused to stipulate to the public availability of the prior art references.  PAN

19   repeatedly informed Wang's counsel that it was producing these additional copies to establish their

20   public availability.  Miller Decl. ¶ 5, Ex. 4.  Wang makes no argument that the copies produced in March

21   2014 are materially different than those produced on September 23, 2013.  A cursory review of the

22   documents in question shows them to be the same references.  *Compare* Miller Decl. ¶¶ 7, 9, 11, 13, and

23   15, Exs. 6, 8, 10, 12, and 14 *with* Miller Decl. ¶¶ 8, 10, 12, 14, and 16, Exs. 7, 9, 11, 13, and 15.

24   ///

25

26   _____

[5] Wang's motion is riddled with factual inaccuracies and mischaracterizations regarding Defendants'
production of documents related to their trade secret misappropriation defenses.  However, as the
27   portions of the motion related to these documents are now moot, Defendants do not address them here.
Defendants expressly reserve their right to address the production of these documents should they
28   become relevant to the litigation.

1    Despite the clear identification of the prior art references in Dr. Paxson's report, Miller Decl. ¶ 4,

2    Ex 3, Wang cites several unrelated documents that he states, without basis, "purportedly relate" to the

3    '143 patent, Pryor reference, and Karp-Rabin reference.  For example, Wang incorrectly states that the

4    document bearing production numbers PANWANG0000287331–71 "purportedly relate[s] to the '143

5    patent."  Motion at 11.  This document is a certified copy of U.S. Patent No. 7,634,500, which was

6    charted separately in PAN's September 23, 2013 Invalidity Contentions, but not discussed in Dr.

7    Paxson's report.  Similarly, Wang claims that PANWANG0000285175–6187 and

8    PANWANG0000287282–300 "purportedly relate" to the Pryor reference.  They do not.  Instead, these

9    documents are copies of independent prior art references charted in PAN's Invalidity Contentions but not

10   analyzed in Dr. Paxson's report.  Wang also refers to five documents that "purportedly relate to the Karp-

11   Rabin reference" that are again entirely separate pieces of prior art not analyzed in Dr. Paxson's report.

12   To the extent Wang was actually confused as to which references Dr. Paxson relied upon, the required

13   meet and confer prior to filing the present motion would have resolved the issue.

14          **C.    Wang Has Suffered No Prejudice**

15          The reproduction of these documents (and the procuring of declarations from the Stanford and

16   UC Davis librarians) was made necessary by Wang's refusal to enter into what should have been a

17   straightforward stipulation.  The timing of that production was, in part, a function of Wang's delay in

18   even responding to PAN's request for such a stipulation.  Even today, Wang has not identified any basis

19   to dispute that these references are authentic and were, in fact, publicly available as of the dates of their

20   library stamps, or identified any additional discovery that he would have conducted.  Wang's motion is

21   thus understandably silent as to any prejudice suffered due to PAN's production of additional copies of

22   these prior art references before the close of fact discovery.  Vague references to alleged prejudice and

23   bad faith cannot hide the fact that Wang has been in possession of the five references Dr. Paxson

24   analyzes in his report since September 23, 2013.  Further, Wang's expert, Dr. Kraft, testified that he had

25   only "glanced" at the references four days before his rebuttal report on the validity of the '418 and '161

26   patents was due, despite acknowledging that they had been identified and charted by PAN in its

27   September 23, 2013 Invalidity Contentions.  Miller Decl. 19, Ex. 18 at 162:5–164:10.

28   ///

## IV.    CONCLUSION

This motion should never have been filed and, following the Court's grant of summary judgment to Defendants on Wang's trade secret misappropriation claim, it should have been immediately withdrawn.  Yet Wang continues to press for the exclusion of prior art references that were disclosed in September 2013 in full compliance with Local Patent Rules 3-3 and 3-4.  For the reasons set forth above, Defendants respectfully request that the Court deny as moot the motion as to the documents related to the trade secret misappropriation claim and deny the motion as to the patent prior art references on the merits.

Dated:  April 18, 2014                                         DURIE TANGRI LLP

By:                        */s/ Laura E. Miller*
                                   LAURA E. MILLER

Attorneys for Defendants
PALO ALTO NETWORKS, INC. and NIR ZUK

Dated:  April 18, 2014                   By:        TAYLOR & COMPANY LAW OFFICES, LLP

                        */s/ Jonathan A. Patchen*
                          JONATHAN A. PATCHEN

Attorneys for Defendant
FENGMIN GONG

### FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Laura E. Miller, attest that concurrence in the filing of this document has been obtained.

Dated:  April 18, 2014                               */s/ Laura E. Miller*
                                   LAURA E. MILLER

### CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on April 18, 2014 with a copy of this document via the Court's CM/ECF system.

                                   */s/ Laura E. Miller*
                                   LAURA E. MILLER

DEFENDANTS' OPP TO PLAINTIFF'S MOTION TO STRIKE PAXSON EXPERT REPORT AND BELATED PRODUCTION OF ASSOCIATED DOCS / CASE NO. 3:12-CV-05579-WHA