1  Qiang Wang

2  92 Churchill Ave

3  Palo Alto, CA 94306

4  Phone: (650)380-4827

5  E-mail: qwang_10@yahoo.com

6  Pro Se

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                         **SAN FRANCISCO DIVISION**

11                                          )  Case Number: C 12-05579 (WHA)
12                                          )
13  QIANG WANG,                             )  **PLAINTIF'S NOTICE OF MOTION AND**
14                                          )  **MOTION FOR VACATING THE**
15              Plaintiff,                  )  **SETTLEMENT**
16  v.                                      )
17                                          )  Date: June 12, 2014
18  PALO ALTO NETWORKS, INC,                )  Time: 8:00 a.m.
19  NIR ZUK, FENGMIN GONG,                  )  Place: Courtroom 8, 19th Floor
20                                          )
21              Defendants.                 )
22                                          )  JUDGE: Honorable William H Alsup
23  _____     )

24

25                 **NOTICE OF MOTION AND REQUESTED RELIEF**

26          NOTICE IS HEREBY GIVEN that on June 12, 2014, at 8:00 a.m., in Courtroom 8 of the

27  United States District Court, San Francisco Courthouse, located at 450 Golden Gate Avenue, San

28  Francisco, California 94102, Plaintiff Qiang Wang will, and hereby do, move for vacating the

29  settlement.

30          Plaintiff moves for vacating the settlement on the ground that undisputed facts establish that

31  this settlement has serious legal flaws and is invalid as a matter of law.

32                              **ISSUE TO BE DECIDED**

33      1.  Whether the settlement shall be vacated on the ground that this settlement has serious

34          legal flaws and is invalid as a matter of law.

1

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I. FACTUAL BACKGROUND**

3 **A. MY COUNSEL'S MISCONDUCTS IN THE MOTION FOR SUMMARY**
4 **JUDGMENT**

5     On March 13, 2014, the defendants submitted a Notice of Motion and Motion for Summary

6 Judgment, which requested that my trade secret misappropriation claim is barred by CUTSA's

7 statute of limitations.

8     After I read the motion, I immediately told my counsel (Mr. Paul Vickrey) that all key facts

9 in the motion were wrong either completely "made-up" or incorrectly presented by the defendants. I

10 wrote down the correct facts against defendants' wrong facts in details one by one and repeatedly

11 requested my counsel to put the correct facts into our response to the motion. I further told my

12 counsel that my "fast signature scan" patents are not in the field of network security and I am not in

13 the field of network security at least from June 2006; the defendants' statement in the lawsuit of

14 Juniper Networks v. Palo Alto Networks in March 2012 is a "must-to-have" for this lawsuit and

15 '566 patent alone is insufficient. However, my counsel refused to put these critical facts into our

16 response to the motion, while he repeatedly assured me that "my response is good" and "we are

17 good [to defeat the motion]". When Judge Alsup asked "If Wang had read '566 patent, he would

18 have known immediately that Gong had betrayed him" during the hearing, my counsel answered

19 "Yes".

20     On April 11, 2014 my counsel informed me that Judge Alsup granted the defendants'

21 motion because "Judge Alsup does not like the case" and "he already wrote the order even before

22 the hearing". However, after reading the order, I was very angry about my counsel's misconducts

23 because the judgment was largely directly or indirectly based on the "made-up" and wrong facts

24 listed by the defendants. Without any counter arguments about the defendants' incorrect facts in

25 details one by one, those incorrect facts were easily confused as "undisputed" facts mistakenly and I

26 was easily labeled as a liar mistakenly. Hence, I requested my counsel to communicate with Judge

27 Alsup about the truth. However, my counsel told me that no reconsideration was possible but we

28 would definitely appeal.

2

1    B. **FAILURE OF FIRST PROPOSED SETTLEMENT**

2         On April 17, while I thought that my counsel was working on an appeal, he suddenly

3    proposed a settlement of $4,000,000. We then had a conference call with Judge Ryu to discuss

4    about the settlement proposal. During the conference, Judge Ryu was kindly willing to help us to

5    communicate with the defendants about the settlement proposal, because we had significantly

6    reduced the settlement from previous $79,000,000 last year to $4,000,000. However, my counsel

7    repeatedly told Judge Ryu that very likely I would pay $2,500,000 to defendants if my patent claims

8    were invalidated. I was so upset about that.

9         On April 21, 2014 my counsel told me that "the defendants are unwilling to pay any money

10   to settle, and are quite confident that they will be entitled to a judgment of fees against you", which

11   was almost identical with what my counsel told Judge Ryu on April 17, 2014.

12   C. **REFUSING A WALK AWAY SETTLEMENT BY ME DURING A**
13      **CONFENENCE CALL WITH JUDGE RYU**

14        Because the defendants' position was almost identical with what my counsel told Judge Ryu

15   a few days ago, I requested for a conference call with Judge Ryu to confirm the defendants' position

16   on April 21, 2014. During the conference, my counsel proposed a walk away settlement proposal, I

17   refused the settlement immediately. I even said that I would prefer to die rather than to accept the

18   settlement, because I did not want to live in a world without any justice and laws to protect innocent

19   people.

20   D. **ENTERING A WALK AWAY SETTLEMENT DISCUSSION**

21        After the conference, I repeatedly told my counsel that I would not accept a walk away

22   settlement. However, my counsel continued to threaten me to pay the defendants about $3,000,000

23   if my patents would be invalidated. Further, my counsel threatened me that "Judge Alsup does not

24   like the case" and "almost certainly he will find a way to invalidate my patents and award the

25   defendants $3,000,000". Further, my counsel threatened me that our fund for covering all expenses

26   for this lawsuit would be run out soon. I argued with my counsel that it is impossible for the Court

27   to use a prior art to invalidate a patent that is not only very different but also *order-of-magnitude*

28   better. Further, my counsel should be responsible for any invalidations of my patent or run out of

3

1   fund, because he insisted to add the patent infringement claim to this lawsuit even after I was

2   repeatedly against it. Further, my counsel told me that his firm would potentially be bankrupt

3   because of this lawsuit.

4   At the same time, my counsel tried his best to allure me to enter the walk away settlement

5   discussion with defendants. My counsel told me that the chance for the defendants to agree on the

6   settlement was "small" and it would put the defendants into a very bad position if they did not agree

7   on the settlement. Further, my counsel promised me to remain in the case including filing an appeal

8   and fund all necessary expenses in written, which was very attractive for me because he had broken

9   his oral promise to appeal and had talked about insufficient funding for the case before. Ex. 1.

10  Finally, I gave my counsel permission to explore the "small" chance of a walk away settlement on

11  April 21, 2014.

12  E.  **ACCEPTING THE SETTLEMENT FOR ME BY MY COUNSEL WITHOUT MY**
13  **PERMISSION**

14  On April 22, 2014 my counsel called me and told me that the defendants accepted the walk

15  away settlement. I told my counsel that I did not want to have the settlement. However, right after

16  our discussion, my counsel informed Judge Ryu and the defendants that I had accepted the

17  settlement without my permission. Ex. 2.

18  F.  **REFUSING TO SIGN THE SETTLEMENT AGREEMENT**

19  On April 23, 2014 my counsel asked me to sign a settlement agreement drafted by the

20  defendants, I refused to sign the settlement agreement. Further, I repeatedly told my counsel that I

21  was in extremely insane state and could not make any decisions now. I begged my counsel to stop

22  threatening and pressing me, and I told him that I needed time to think and get a second opinion.

23  However, my counsel continued to call and email me: eight emails along with many calls within a

24  few hours to endlessly threaten and harass me. Because I was strongly against the agreement, I did

25  not return any of his emails and phone calls. Exs. 3-5. In his emails, my counsel further threatened

26  me that I would be sanctioned [by the Court] and he would not represent me anymore if I did not

27  sign the agreement immediately. Ex. 3. Further, in his email, my counsel gave me a deadline to

28  reply to him by 2:30pm Pacific and otherwise he would inform Judge Ryu that we would be seeking

4

1    to withdraw [the settlement]. Ex.5. I did not reply my counsel by the deadline, because I wanted to

2    withdraw the settlement that I was strongly against from the very beginning. In fact, I believed that I

3    had already effectively withdrawn the settlement because I breached my counsel's deadline of

4    2:30pm Pacific. Ex.5. I finally replied an email to my counsel in the evening and clearly refused the

5    settlement. Ex. 5.

6            G. **SIGNING THE SETTLEMENT AGREEMENT MODIFIED BY ME**

7            In the early morning of April 24, 2014 my counsel woke me up from sleep and repeatedly

8    threatened me to pay the defendants $3,000,000, to be sanctioned by the Court, and to face that he

9    would not represent me anymore if I did not sign the settlement agreement by 2:00pm. I was so

10   afraid that it would be another day the same as the previous day. My counsel further threatened me

11   that the Court would enforce the settlement anywhere even without my signature, instantly putting

12   me into a hopeless insane state to sign the agreement. I crossed out the first half of paragraph 7 in

13   pages 2-3 and signed the agreement without putting the effective day in page 1 in an extremely

14   insane state. Ex. 6.

15           H. **MISSING MY SIGNATURE IN THE FINAL SETTLEMENT AGREEMENT**

16           After I signed the settlement agreement modified by me, my counsel worked with the

17   defendants for a final settlement agreement with a new paragraph 7 and an effective day of April

18   24, 2014. However, my counsel did not inform me about the changes until I found the existence of

19   the final settlement agreement that was modified without me one day late by myself, after I asked

20   my counsel to send me a copy of the settlement agreement signed by everyone. Exs.7-8.

21           Further, both my signature and my counsel's signature were missing in the final settlement

22   agreement signed by the defendants. Ex. 8. Because my counsel knew that I would not sign the final

23   settlement agreement after I recovered from the extremely insane state he put me into, he did not

24   even ask me to sign the final settlement agreement. Instead, my counsel and the defendants illegally

25   synthesized the final settlement agreement by using my previous signature page without my

26   permission. Ex. 8.

27           There were total three signature pages in the synthesized final settlement agreement (Ex. 8)

28   and all of them were labeled as page 5. It obvious that the second signature page was signed by my

5

1    counsel using my previous signature page for the settlement agreement modified by me (Ex. 6),

2    because, other than my counsel's signature, it is identical with my previous signature page including

3    notable printing flaws such as truncated page number and extra lines in the bottom and left of the

4    page. It is also obvious that the second signature page and all other pages in the synthesized final

5    settlement agreement, which clearly do not have the notable printing flaws, do not belong to a same

6    document. On the other hand, the first signature page was signed by Palo Alto Networks, Inc., Nir

7    Zuk, and their counsel, and was obviously for the final settlement agreement. The third signature

8    page was signed by Fengmin Gong and his counsel using the first signature page. If both I and my

9    counsel signed on the third signature page, it would become the final signature page for the final

10   settlement agreement. However, both my signature and my counsel's signature were missing in that

11   signature page.

12   I. **REQUESTING TO VACATE THE SETTLEMENT BY ME IN THE SAME DAY**

13   In the evening of April 24, 2014, I sent Judge Ryu an email to stop the settlement. Ex.9.

14   On April 25, 2014 I requested my counsel to stop the settlement. However, my counsel refused to

15   do so. Further, my counsel told me that he would not represent me anymore and I needed to find a

16   separate counsel. Further, from April 24, 2014, the day that I signed the settlement agreement

17   modified by me, I was diligently working on vacating the settlement.

18   **II. ARGUMENT**

19   First, my signature is completely missing in the final settlement agreement signed by the

20   defendants (Ex. 8). I only signed the settlement agreement modified by me (Ex. 6) that was different

21   with the final settlement agreement. The paragraph 7 was modified and the effective date was added

22   in the final settlement agreement. I did not even know the existence of the final agreement before

23   the case was dismissed. Further, the defendants did not sign the settlement agreement modified by

24   me. Hence, this settlement is invalid. Further, my counsel and the defendants illegally synthesized

25   the final settlement agreement by using my previous signature page without my permission, which

26   will surely disqualify the settlement agreement. My signature page in the synthesized final

27   settlement agreement was so different with all other pages in the synthesized final settlement

6

1    agreement. Hence, it is impossible for any reasonable persons to believe that my signature page

2    belongs to the final settlement agreement.

3          Second, I only gave my counsel permission to explore a walk away settlement proposal with

4    the defendants on April 21, 2014. Ex. 1. However, I did not give my counsel permission to accept

5    the settlement for me on April 22, 2014. Ex. 2. In fact, I was strongly against the settlement in our

6    discussion on April 22, 2014. My counsel either mistakenly or intentionally accepted the settlement

7    for me. Although this could be an issue of miscommunication, particularly due to my poor English,

8    my counsel knew that I was strongly against the settlement from the very beginning. Further, my

9    counsel did not ask me to confirm the acceptance in written as he did in the previous day. Hence,

10    this settlement agreement is invalid.

11          Third, I signed the settlement agreement modified by me on April 24, 2014 only after my

12    counsel improperly threatened me that the Court would enforce the settlement anywhere even

13    without my signature and I would be further sanctioned by the Court if I did not sign the agreement

14    by 2:00pm. Ex. 3. Both of the threats were false and improperly made up by my counsel on

15    purpose. Hence, this settlement agreement is invalid.

16          Fourth, I signed the settlement agreement modified by me on April 24, 2014 and gave my

17    counsel permission to explore a walk away settlement with the defendants on April 21, 2014, only

18    when my counsel improperly put me into an extremely insane state momentarily, after he

19    continually improperly threatened me and made me feeling depression and hopeless. Exs. 3-5.

20    However, I was strongly against the settlement all other time. Exs. 3-5. On April 23, 2014, I

21    breached my counsel's deadline of 2:30pm Pacific and had effectively withdrawn the settlement; I

22    clearly refused the settlement in the evening after I thought about the settlement for one whole day.

23    Ex. 5. Further, I emailed Judge Ryu to stop the settlement in the same day as I signed the settlement

24    agreement modified by me. Ex. 9. Further, I told my counsel that I was not able to make any valid

25    decisions when I talked to him in the insane state. Hence, this settlement agreement is invalid.

26          Fifth, I signed the settlement agreement modified by me on April 24, 2014 and gave my

27    counsel permission to explore a walk away settlement with the defendants on April 21, 2014 based

28    on false reasons provided by my counsel on purpose. My counsel repeatedly told me that "Judge

1     Alsup does not like your case", "he already wrote the order even before the hearing", and "he will

2     find a way to terminate the case and award the defendants fees". How could my counsel be right?

3     Further, my counsel told me that not only I could not make a request for reconsideration for the

4     summary judgment, but also I could not even appeal before paying the defendants about

5     $3,000,000. How could our laws be so unfair to poor but innocent people? Hence, this settlement

6     agreement is invalid.

7     Sixth, clearly my counsel's misconducts during the motion for summary judgment greatly

8     helped the defendants. Further, my counsel added the patent infringement claims into this lawsuit

9     against my wish. In order to cover his misconducts during the motion and escape his responsibility

10     of the bad outcome, in order to escape his potential responsibility of invalidation of my patents, in

11     order to protect his firm from a potential "bankrupt", my counsel improperly forced me into this

12     settlement. Hence, this settlement is invalid.

13     Seventh, evidences indicate that my counsel had improperly planned this walk away

14     settlement in four steps. In the first step, he pushed me into the settlement discussion by proposed a

15     $4,000,000 settlement, while he improperly coached the defendants to refuse the settlement

16     proposal by repeatedly telling Judge Ryu that I will likely have to pay the defendants $2,500,000. In

17     the second step, he improperly made me to give him permission to explore the "small" possibility of

18     a walk away settlement by continually improperly threatening me into an extremely insane state and

19     improperly alluring me with his written promise to remain in the case including filing an appeal and

20     fund all necessary expenses. Ex. 1. In the third step, he simply accepted the settlement for me

21     without my permission. Ex. 2. In the fourth step, by improperly threatening me that the Court would

22     enforce the settlement even without my signature and I would be further sanctioned by the Court if I

23     did not sign the agreement, I had to sign the settlement agreement. Exs. 3-5. Hence, my counsel

24     would successfully force me to accept the settlement as long as he was successfully in the second

25     step. Clearly, my counsel's plan is improper. Hence, this settlement is invalid.

26     **III. CONCLOSION**

27     There were a wealth of evidences that the settlement was improperly entered because of my

28     counsel's misconducts including continually improperly threatening me, putting me into an

1      extremely insane state momentarily, and providing me false reasons and false threats on purpose,

2      while he knew that I was strongly against the settlement from the very beginning. Further, the

3      settlement was either mistakenly or intentionally accepted by my counsel for me without my

4      permission. Further, I signed the settlement agreement modified by me only after my counsel

5      threatened me that the Court would enforce the settlement anywhere even without my signature and

6      I would be further sanctioned by the Court if I did not sign the agreement by 2:00pm, which was

7      false and made up illegally by my counsel on purpose. Further, my signature in final settlement

8      agreement was missing. My counsel and the defendants illegally synthesized the final settlement

9      agreement by putting my previous signature page into the final settlement agreement without my

10      permission. It is obviously that my signature page does not belong to the final settlement agreement.

11      Further, evidences indicate that my counsel was very motivated to force me into the settlement and

12      he had improperly planned the settlement. Hence, the settlement is invalid.

13         For these reasons, I respectfully request that the Court grant the motion for vacating the

14      settlement.

15                                     Respectfully submitted,

16      Date: 5-7-2014                 Signature: _____

17                                    Printed name: QIANG WANG

18                                               Pro Se

| Subject: | RE: PAN |
|---|---|
| From: | Vickrey, Paul K (vickrey@nshn.com) |
| To: | qwang_10@yahoo.com; |
| Date: | Monday, April 21, 2014 2:57 PM |

Yes, if an appeal is required, we would handle it. As for "doing every possible things for the case", we would continue to exercise our best judgment on your behalf. Paul

**From:** Qiang Wang [mailto:qwang_10@yahoo.com]
**Sent:** Monday, April 21, 2014 4:50 PM
**To:** Vickrey, Paul K
**Subject:** Re: PAN

Hi Paul,

Yes, if the "remain in the case" means "appeal and tries to do every possible things for this case". Could you please confirm.

Thanks,

Qiang

**From:** "Vickrey, Paul K" <vickrey@nshn.com>
**To:** "qiang wang (qwang_10@yahoo.com) (qwang_10@yahoo.com)" <qwang_10@yahoo.com>
**Sent:** Monday, April 21, 2014 2:41 PM
**Subject:** RE: PAN

Qiang, as discussed, if you agree to a walk away, and the defendants refuse, we agree to remain in the case and fund all necessary expenses. We agree to this only if you agree to allow me to call Judge Ryu now to inform her that you will agree to a walk away. Please confirm that I can make the call. Paul

**From:** Vickrey, Paul K
**Sent:** Monday, April 21, 2014 1:50 PM

EXHIBIT 2

**Subject:**  FW: Wang v. PAN

**From:**  Vickrey, Paul K (vickrey@nshn.com)

**To:**  qwang_10@yahoo.com;

**Date:**  Tuesday, April 22, 2014 11:39 AM

**From:** Vickrey, Paul K
**Sent:** Tuesday, April 22, 2014 12:56 PM
**To:** R Kent; J Patchen; 'dmrpo@cand.uscourts.gov'
**Subject:** Wang v. PAN

Dear Counsel and Judge Ryu:

This confirms that my client has agreed to the following terms: (1) a release of all claims known and unknown, including all rights under California Civil Code Section 1542; (2) a covenant not to sue on any patent- in- suit or related patents/applications; (3) Defendants covenant not to challenge the validity of any of Mr. Wang's patents (however, should Mr. Wang breach his covenant, Defendants could then challenge the validity of Mr. Wang's patents); and (4) the parties will dismiss all claims with prejudice, all parties bearing their own costs and fees.

Respectfully,

Paul Vickrey

**Subject:** RE: Wang Settlement Agreement (4-22-14) -- Rule 408 Communication

**From:** Vickrey, Paul K (vickrey@nshn.com)

**To:** qwang_10@yahoo.com;

**Date:** Wednesday, April 23, 2014 7:52 AM

Qiang, you authorized me to represent to Judge Ryu that you agreed to all of the terms, and I did so. You need to send me the signed document now. I tried to explain that to you and you hung up on me twice. You cannot renege on your agreement, and if you try to do that you will be sanctioned. Paul

**From:** Vickrey, Paul K
**Sent:** Wednesday, April 23, 2014 8:19 AM
**To:** qiang wang (qwang_10@yahoo.com) (qwang_10@yahoo.com)
**Subject:** FW: Wang Settlement Agreement (4-22-14) -- Rule 408 Communication

Qiang, this looks good to us. Again, under this agreement you face no liability or claim for any of their costs and fees. Please sign this and return it to me. Regards, Paul

**From:** Ryan Kent [mailto:RKent@durietangri.com]
**Sent:** Tuesday, April 22, 2014 8:33 PM
**To:** Vickrey, Paul K; J Patchen
**Cc:** R Tangri
**Subject:** Wang Settlement Agreement (4-22-14) -- Rule 408 Communication

Paul,

Please find attached a settlement agreement for *Wang v. Palo Alto Networks, Inc., et al.*, Case No. 3:12-cv-05579-WHA. If the form of the agreement is acceptable, please confirm, and each party and counsel can sign and date the agreement.

Ryan—

EXHIBIT 4

| | |
|---|---|
| **Subject:** | RE: Wang v. PAN |
| **From:** | Vickrey, Paul K (vickrey@nshn.com) |
| **To:** | qwang_10@yahoo.com; |
| **Date:** | Wednesday, April 23, 2014 1:30 PM |

Qiang, please call me. Paul

**From:** Vickrey, Paul K
**Sent:** Wednesday, April 23, 2014 12:50 PM
**To:** qiang wang (qwang_10@yahoo.com) (qwang_10@yahoo.com)
**Subject:** RE: Wang v. PAN

Qiang, you hung up on me twice, and now you aren't taking my calls. I need to hear from you
because I need to get back to Judge Ryu. Paul

**From:** Vickrey, Paul K
**Sent:** Wednesday, April 23, 2014 10:15 AM
**To:** qiang wang (qwang_10@yahoo.com) (qwang_10@yahoo.com)
**Subject:** RE: Wang v. PAN

Qiang, this is not a game, and there are serious repercussions to reneging on your agreement. I need
you to send me the signed document. To be very clear, if you try to renege on your agreement, we
cannot and will not represent you. Paul

**From:** Vickrey, Paul K
**Sent:** Wednesday, April 23, 2014 9:54 AM
**To:** qiang wang (qwang_10@yahoo.com) (qwang_10@yahoo.com)
**Subject:** FW: Wang v. PAN

I sent this to Judge Ryu based on your agreement.

EXHIBIT 3

| | |
|---|---|
| **Subject:** | Re: |
| **From:** | Qiang Wang (qwang_10@yahoo.com) |
| **To:** | vickrey@nshn.com; |
| **Date:** | Thursday, April 24, 2014 12:07 AM |

Hi Paul,

As I said, I had to think about it hard. At one day thinking, I did not want to sign the agreement. Let's work on winning the motion of patent invalidation.

Thanks,

Qiang

---

**From:** "Vickrey, Paul K" <vickrey@nshn.com>
**To:** "qiang wang (qwang_10@yahoo.com) (qwang_10@yahoo.com)" <qwang_10@yahoo.com>
**Sent:** Wednesday, April 23, 2014 3:04 PM
**Subject:** RE:

Qiang, I spoke to Judge Ryu. I told her that I was waiting to hear back from you. I did not say anything about withdrawing, but if you continue to refuse to speak with me I don't see how we can continue to represent you. I will try to reach you in the morning. Paul

**From:** Vickrey, Paul K
**Sent:** Wednesday, April 23, 2014 4:15 PM
**To:** qiang wang (qwang_10@yahoo.com) (qwang_10@yahoo.com)
**Subject:**

Qiang, I will be calling Judge Ryu at 2:30 Pacific. Unless I hear from you before then, I will inform her that we will be seeking to withdraw. Paul

EXHIBIT 6

## SETTLEMENT AGREEMENT AND RELEASE

This Agreement, dated as of April ___, 2014 (the "Effective Date") is made and entered into by and between Qiang Wang ("Wang") and Palo Alto Networks, Inc. ("PAN"), Nir Zuk ("Zuk"), and Fengmin Gong ("Gong") (each a "Party" and collectively the "Parties").

## RECITALS

There is litigation pending between the Parties: *Qiang Wang v. Palo Alto Network, Inc. et al.*, Case No. 3:12-cv-05579-WHA, N.D. Cal. ("the Lawsuit");

Wang has made claims against PAN, Zuk and Gong in the Lawsuit;

PAN, Zuk and Gong have denied Wang's claims and asserted affirmative defenses including an assertion that U.S. Patent Nos. 7,454,418 and 7,870,161 are invalid; and

The Parties seek to resolve the Lawsuit and further wish to avoid potential future disputes;

Wherefore, the Parties have agreed as follows:

## AGREEMENT

### Definitions

The following terms will have the following definitions when used in this Agreement:

1.     "Defendant Released Parties" means each of PAN, Zuk and Gong and their officers, directors, principals, trustees, administrators, managers, representatives, general and/or limited partners, agents, members, shareholders, employees, consultants, customers, suppliers, resellers, distributors, attorneys, affiliates, subsidiaries, insurers, predecessors and successors in interest, heirs and assigns.

2.     "Wang Patent Rights" means (i) all patents asserted in the Lawsuit including U.S. Patent Nos. 7,454,418 and 7,870,161 (herein, the "Asserted Patents"), and (ii) all patents and applications related to the Asserted Patents including reissues, reexaminations, continuations, continuations-in-part, divisionals, foreign counterparts and any other patent or application that claims priority to one or more of the Asserted Patents or to U.S. Provisional Patent Application Ser. No. 60/518,032, filed on November 7, 2003.

3.     "Wang Releasing Parties" means Wang and his representatives, general and/or limited partners, agents, consultants, attorneys, insurers, predecessors and successors in interest, heirs and assigns.

### Terms

1.     **Release by Wang Releasing Parties**: Wang, on behalf of himself and any other Wang Releasing Parties, fully, permanently and unconditionally releases and discharges

Defendant Released Parties from any and all liability, claims, cross-claims, counterclaims, demands, debts, damages, expenses, fees, penalties, charges, liens, suits and causes of action of every kind and character whatsoever, known or unknown, accrued or unaccrued, existing or claimed to exist, from the beginning of time, whether arising out of contract, tort or otherwise, in law or in equity, existing as of the Effective Date ("Wang Released Claims").

2.      **Release Extends to Unknown Claims – 1542 Waiver:**  By signing below, the Wang Releasing Parties expressly waive any benefits of California Civil Code § 1542 (and any similar or analogous provision of the law of any other State) which states:

> "A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor."

Each Party agrees and acknowledges that the Claims released in this Agreement extend to and include unknown claims. The Wang Releasing Parties acknowledge that each of them are aware that they may hereafter discover facts or law different from or in addition to those which they now know or believe to be true in respect to the claims, demands, damages, debts, liabilities, actions or causes of action herein released, and they agree that this release shall be and remain in effect as a complete release as to the matters released, notwithstanding any such additional facts or law.

3.      **Dismissal of Claims:**  Within one (1) court day of the Effective Date, Wang and PAN, Zuk and Gong shall file a Stipulation of Dismissal of the Lawsuit, dismissing with prejudice all claims with each Party to bear its own fees and costs.

4.      **No Admissions:**  The Parties expressly agree and acknowledge that by entering into this Agreement, none of PAN, Zuk, or Gong admits any liability, wrongdoing, or the truth of any allegation contained in any claim, defense or counterclaim alleged in the Lawsuit. Neither this Agreement nor any provision contained within it (nor any action taken in satisfaction of any such provision) may be construed or used as an admission of any issues, facts, wrongdoing, liability, or violation of law whatsoever.

5.      **Each Party to Bear Its Own Fees:**  The Defendant Released Parties agree that they shall bear their legal fees and costs incurred in connection with the Lawsuit, and the Wang Releasing Parties agree that they shall bear their legal fees and costs incurred in connection with the Lawsuit.

6.      **Covenant Not to Sue:**  Wang, on behalf of himself and any other Wang Releasing Parties, hereby covenants not to assert, bring or remain as an adverse party in, any suit, claim, or cause of action of any nature before any legal, judicial, arbitration, administrative, executive or other type of body or tribunal that has or claims to have authority to adjudicate such action in whole or in part, alleging infringement of any of the Wang Patent Rights by any or all of the Defendant Released Parties.

7.      **Acknowledgement of Non-Inventorship:**  ~~Wang expressly agrees and acknowledges that he is not an inventor of U.S. Patent No. 8,009,566 (the "'566 Patent") or any~~

2

~~other patent or application related to the '566 Patent including reissues, reexaminations, continuations, continuations-in-part, divisionals, foreign counterparts and any other patent or application that claims priority to the '566 Patent ("the PAN Patents"). Accordingly,~~ Wang hereby covenants not to assert, bring or remain as an adverse party in, any suit, claim, or cause of action of any nature before any legal, judicial, arbitration, administrative, executive or other type of body or tribunal that has or claims to have authority to adjudicate such action in whole or in part, alleging that he is an inventor of the PAN Patents.

8. **Patent Validity:** Defendant Released Parties agree not to assert any claim, suit, action or proceeding seeking to challenge the validity of any of the Wang Patent Rights, provided however that the Parties acknowledge and agree that any or all of the Defendant Released Parties shall have the right to challenge the validity and enforceability of the Wang Patent Rights if a claim of patent infringement is made against the any or all of the Defendant Released Parties with respect to any of the Wang Patent Rights.

9. **Warranty of Ownership:** Wang represents and warrants that he owns the Wang Patent Rights that exist as of the Effective Date, and has the sole right and exclusive authority to grant the release and covenant set forth in this Agreement. Wang further warrants that (i) no ownership interest in the Wang Patent Rights that exist as of the Effective Date is held by any third party, and (ii) the Wang Patent Rights that exist as of the Effective Date are not subject to any encumbrance, lien or claim of ownership by any third party that would conflict with the release or covenant granted in this Agreement.

10. **Other Representations and Warranties:** Each Party represents and warrants to each of the other Parties that:

> a. it is the sole owner of the claims or causes of action released in this Agreement and has not previously assigned or transferred, or purported to assign or transfer, any interest in such claims or causes of action to any other person or entity;
>
> b. in negotiating and signing this agreement it has sought and received advice from the attorneys of its choosing;
>
> c. it has full authority to enter into this Agreement and is competent to do so;
>
> d. it has the right and authority to enter into the express covenant set forth in this Agreement; and
>
> e. this Agreement constitutes the legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

11. **Assignment, Successors and Assigns:** In the event that Wang or any other Wang Releasing Party assigns any of the Wang Patent Rights or transfers any rights under any of the Wang Patent Rights, any such assignment, exclusive license, or transfer shall be made subject to this Agreement including the covenant not to sue set forth in section 6 and the provisions of section 11. Otherwise, any such assignment, exclusive license, or transfer shall be null and void. This Agreement will be binding upon, inure to the benefit of, and be enforceable by each of the Parties and their respective successors and assigns.

12. **Governing Law, Jurisdiction, and Venue:** This Agreement shall be governed by, interpreted and construed in accordance with the laws of California, without reference to conflicts of laws principles. Any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a state or federal court in the Northern District of California. Each Party expressly and irrevocably consents and submits to the jurisdiction of such state and federal courts in connection with any such legal proceeding.

13. **Integration:** This Agreement constitutes the entire agreement, and supersedes any and all prior agreements, of the parties with respect to the Lawsuit. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party, except as specifically set forth in this Agreement. All prior discussions, written communications, and negotiations have been merged and integrated into and are superseded by this Agreement. Any amendment, waiver or modification of this Agreement must be set forth in writing and signed the party to be bound thereby.

14. **Interpretation:** The headings and captions used herein shall not be used to interpret or construe this Agreement. Moreover, the language of this Agreement has been approved by counsel for the Parties. The language of this Agreement shall be construed as a whole according to its fair meaning, and none of the Parties (or the Parties' respective attorneys) shall be deemed to be the draftsman of this Agreement in any action which may hereafter arise between the Parties.

15. **Severability:** If any provision of this Agreement is held invalid, illegal, or unenforceable, the remaining provisions shall not be affected. The Parties shall consult and use their reasonable and best efforts to agree upon a valid and enforceable provision which shall be a reasonable substitute for the invalid, illegal or unenforceable provision.

16. **Waiver:** No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving Party.

17. **Counterparts:** This Agreement may be executed by the parties in counterparts, which, when assembled, shall be considered as a fully executed original of this Agreement.

18. **Signature Authority:** Each person signing this Agreement represents that he or she is duly authorized and possesses full authority to bind the Party on whose behalf he or she is signing, and that no signature of any other person or entity is necessary to bind the Party on whose behalf he or she is signing.

///

///

///

IN WITNESS WHEREOF, the Parties have duly entered into this Agreement as of the date first written above.

ACCEPTED AND SO AGREED:

**PALO ALTO NETWORKS, INC.**          **QIANG WANG**

By: _____          Date: _____April 24, 2014_____
Its: _____
Date: _____

**NIR ZUK**                           **FENGMIN GONG**

Date: _____        Date: _____


APPROVED AS TO FORM:

**Durie Tangri LLP**

By: _____
Date: _____

**Taylor & Company Law Offices, LLP**

By: _____
Date: _____

**Niro, Haller & Niro, Ltd.**

By: _____
Date: _____

5

| Subject: | FW: Wang v. PAN |
| From: | Vickrey, Paul K (vickrey@nshn.com) |
| To: | qwang_10@yahoo.com; |
| Date: | Friday, April 25, 2014 12:20 PM |

Qiang, here it is. Paul

## SETTLEMENT AGREEMENT AND RELEASE

This Agreement, dated as of April 24, 2014 (the "Effective Date") is made and entered into by and between Qiang Wang ("Wang") and Palo Alto Networks, Inc. ("PAN"), Nir Zuk ("Zuk"), and Fengmin Gong ("Gong") (each a "Party" and collectively the "Parties").

## RECITALS

There is litigation pending between the Parties: *Qiang Wang v. Palo Alto Network, Inc. et al.*, Case No. 3:12-cv-05579-WHA, N.D. Cal. ("the Lawsuit");

Wang has made claims against PAN, Zuk and Gong in the Lawsuit;

PAN, Zuk and Gong have denied Wang's claims and asserted affirmative defenses including an assertion that U.S. Patent Nos. 7,454,418 and 7,870,161 are invalid; and

The Parties seek to resolve the Lawsuit and further wish to avoid potential future disputes;

Wherefore, the Parties have agreed as follows:

## AGREEMENT

### Definitions

The following terms will have the following definitions when used in this Agreement:

1.      "Defendant Released Parties" means each of PAN, Zuk and Gong and their officers, directors, principals, trustees, administrators, managers, representatives, general and/or limited partners, agents, members, shareholders, employees, consultants, customers, suppliers, resellers, distributors, attorneys, affiliates, subsidiaries, insurers, predecessors and successors in interest, heirs and assigns.

2.      "Wang Patent Rights" means (i) all patents asserted in the Lawsuit including U.S. Patent Nos. 7,454,418 and 7,870,161 (herein, the "Asserted Patents"), and (ii) all patents and applications related to the Asserted Patents including reissues, reexaminations, continuations, continuations-in-part, divisionals, foreign counterparts and any other patent or application that claims priority to one or more of the Asserted Patents or to U.S. Provisional Patent Application Ser. No. 60/518,032, filed on November 7, 2003.

3.      "Wang Releasing Parties" means Wang and his representatives, general and/or limited partners, agents, consultants, attorneys, insurers, predecessors and successors in interest, heirs and assigns.

### Terms

1.      **Release by Wang Releasing Parties**: Wang, on behalf of himself and any other Wang Releasing Parties, fully, permanently and unconditionally releases and discharges

1

Defendant Released Parties from any and all liability, claims, cross-claims, counterclaims, demands, debts, damages, expenses, fees, penalties, charges, liens, suits and causes of action of every kind and character whatsoever, known or unknown, accrued or unaccrued, existing or claimed to exist, from the beginning of time, whether arising out of contract, tort or otherwise, in law or in equity, existing as of the Effective Date ("Wang Released Claims").

2. **Release Extends to Unknown Claims – 1542 Waiver:** By signing below, the Wang Releasing Parties expressly waive any benefits of California Civil Code § 1542 (and any similar or analogous provision of the law of any other State) which states:

> "A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor."

Each Party agrees and acknowledges that the Claims released in this Agreement extend to and include unknown claims. The Wang Releasing Parties acknowledge that each of them are aware that they may hereafter discover facts or law different from or in addition to those which they now know or believe to be true in respect to the claims, demands, damages, debts, liabilities, actions or causes of action herein released, and they agree that this release shall be and remain in effect as a complete release as to the matters released, notwithstanding any such additional facts or law.

3. **Dismissal of Claims:** Within one (1) court day of the Effective Date, Wang and PAN, Zuk and Gong shall file a Stipulation of Dismissal of the Lawsuit, dismissing with prejudice all claims with each Party to bear its own fees and costs.

4. **No Admissions:** The Parties expressly agree and acknowledge that by entering into this Agreement, none of PAN, Zuk, or Gong admits any liability, wrongdoing, or the truth of any allegation contained in any claim, defense or counterclaim alleged in the Lawsuit. Neither this Agreement nor any provision contained within it (nor any action taken in satisfaction of any such provision) may be construed or used as an admission of any issues, facts, wrongdoing, liability, or violation of law whatsoever.

5. **Each Party to Bear Its Own Fees:** The Defendant Released Parties agree that they shall bear their legal fees and costs incurred in connection with the Lawsuit, and the Wang Releasing Parties agree that they shall bear their legal fees and costs incurred in connection with the Lawsuit.

6. **Covenant Not to Sue:** Wang, on behalf of himself and any other Wang Releasing Parties, hereby covenants not to assert, bring or remain as an adverse party in, any suit, claim, or cause of action of any nature before any legal, judicial, arbitration, administrative, executive or other type of body or tribunal that has or claims to have authority to adjudicate such action in whole or in part, alleging infringement of any of the Wang Patent Rights by any or all of the Defendant Released Parties.

7. **Acknowledgement of Non-Inventorship:** Wang hereby covenants not to assert, bring or remain as an adverse party in, any suit, claim, or cause of action of any nature before

2

any legal, judicial, arbitration, administrative, executive or other type of body or tribunal that has or claims to have authority to adjudicate such action in whole or in part, alleging that he is an inventor of U.S. Patent No. 8,009,566 (the "'566 Patent") or any other patent or application related to the '566 Patent including reissues, reexaminations, continuations, continuations-in-part, divisionals, foreign counterparts and any other patent or application that claims priority to the '566 Patent.

8. **Patent Validity:** Defendant Released Parties agree not to assert any claim, suit, action or proceeding seeking to challenge the validity of any of the Wang Patent Rights, provided however that the Parties acknowledge and agree that any or all of the Defendant Released Parties shall have the right to challenge the validity and enforceability of the Wang Patent Rights if a claim of patent infringement is made against the any or all of the Defendant Released Parties with respect to any of the Wang Patent Rights.

9. **Warranty of Ownership:** Wang represents and warrants that he owns the Wang Patent Rights that exist as of the Effective Date, and has the sole right and exclusive authority to grant the release and covenant set forth in this Agreement. Wang further warrants that (i) no ownership interest in the Wang Patent Rights that exist as of the Effective Date is held by any third party, and (ii) the Wang Patent Rights that exist as of the Effective Date are not subject to any encumbrance, lien or claim of ownership by any third party that would conflict with the release or covenant granted in this Agreement.

10. **Other Representations and Warranties:** Each Party represents and warrants to each of the other Parties that:

> a. it is the sole owner of the claims or causes of action released in this Agreement and has not previously assigned or transferred, or purported to assign or transfer, any interest in such claims or causes of action to any other person or entity;
>
> b. in negotiating and signing this agreement it has sought and received advice from the attorneys of its choosing;
>
> c. it has full authority to enter into this Agreement and is competent to do so;
>
> d. it has the right and authority to enter into the express covenant set forth in this Agreement; and
>
> e. this Agreement constitutes the legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

11. **Assignment, Successors and Assigns:** In the event that Wang or any other Wang Releasing Party assigns any of the Wang Patent Rights or transfers any rights under any of the Wang Patent Rights, any such assignment, exclusive license, or transfer shall be made subject to this Agreement including the covenant not to sue set forth in section 6 and the provisions of section 11. Otherwise, any such assignment, exclusive license, or transfer shall be null and void. This Agreement will be binding upon, inure to the benefit of, and be enforceable by each of the Parties and their respective successors and assigns.

12. **Governing Law, Jurisdiction, and Venue:** This Agreement shall be governed by, interpreted and construed in accordance with the laws of California, without reference to

3

conflicts of laws principles. Any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a state or federal court in the Northern District of California. Each Party expressly and irrevocably consents and submits to the jurisdiction of such state and federal courts in connection with any such legal proceeding.

13.     **Integration:** This Agreement constitutes the entire agreement, and supersedes any and all prior agreements, of the parties with respect to the Lawsuit. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party, except as specifically set forth in this Agreement. All prior discussions, written communications, and negotiations have been merged and integrated into and are superseded by this Agreement. Any amendment, waiver or modification of this Agreement must be set forth in writing and signed the party to be bound thereby.

14.     **Interpretation:** The headings and captions used herein shall not be used to interpret or construe this Agreement. Moreover, the language of this Agreement has been approved by counsel for the Parties. The language of this Agreement shall be construed as a whole according to its fair meaning, and none of the Parties (or the Parties' respective attorneys) shall be deemed to be the draftsman of this Agreement in any action which may hereafter arise between the Parties.

15.     **Severability:** If any provision of this Agreement is held invalid, illegal, or unenforceable, the remaining provisions shall not be affected. The Parties shall consult and use their reasonable and best efforts to agree upon a valid and enforceable provision which shall be a reasonable substitute for the invalid, illegal or unenforceable provision.

16.     **Waiver:** No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving Party.

17.     **Counterparts:** This Agreement may be executed by the parties in counterparts, which, when assembled, shall be considered as a fully executed original of this Agreement.

18.     **Signature Authority:** Each person signing this Agreement represents that he or she is duly authorized and possesses full authority to bind the Party on whose behalf he or she is signing, and that no signature of any other person or entity is necessary to bind the Party on whose behalf he or she is signing.

///

///

///

4

IN WITNESS WHEREOF, the Parties have duly entered into this Agreement as of the date first written above.

ACCEPTED AND SO AGREED:

**PALO ALTO NETWORKS, INC.**          **QIANG WANG**

By: _____          Date: _____
Its: _____VP + General Counsel_____
Date: _____4 - 24 - 14_____

**NIR ZUK**          **FENGMIN GONG**

Date: _____4/24/14_____          Date: _____

APPROVED AS TO FORM:

**Durie Tangri LLP**

By: _____RYAN KENT_____
Date: _____4/24/14_____

**Taylor & Company Law Offices, LLP**

By: _____
Date: _____

**Niro, Haller & Niro, Ltd.**

By: _____
Date: _____

IN WITNESS WHEREOF, the Parties have duly entered into this Agreement as of the date first written above.

ACCEPTED AND SO AGREED:

**PALO ALTO NETWORKS, INC.**                    **QIANG WANG**

By: _____                    Date: _____ April 24, 2014 _____
Its: _____
Date: _____

**NIR ZUK**                                     **FENGMIN GONG**

Date: _____                   Date: _____

APPROVED AS TO FORM:

**Durie Tangri LLP**

By: _____
Date: _____

**Taylor & Company Law Offices, LLP**

By: _____
Date: _____

**Niro, Haller & Niro, Ltd.**

By: _____
Date: _____ April 24, 2014 _____

5

IN WITNESS WHEREOF, the Parties have duly entered into this Agreement as of the date first written above.

ACCEPTED AND SO AGREED:

PALO ALTO NETWORKS, INC.                    QIANG WANG

By: _____         Date: _____
Its: _____VP & General Counsel_____
Date: _____4 - 24 - 14_____

NIR ZUK                                      FENGMIN GONG

Date: _____4/24/14_____              Date: _____4/24/14_____


APPROVED AS TO FORM:

Durie Tangri LLP

By: _____RYAN KENT_____
Date: _____4/24/14_____

Taylor & Company Law Offices, LLP

By: _____Jonathan Patchen_____
Date: _____4/24/14_____

Niro, Haller & Niro, Ltd.

By: _____
Date: _____

5

EXHIBIT 9

**Subject:**  Re: Could you please forward this email to Judge Ryu as soon as possible?

**From:**    DMRCRD@cand.uscourts.gov (DMRCRD@cand.uscourts.gov)

**To:**      qwang_10@yahoo.com;

**Date:**    Thursday, April 24, 2014 9:51 PM

Thank you for contacting the United States District Court for the Northern District of California. This email is checked regularly during regular business hours (weekdays, 9 a.m. to 4:00 p.m. Pacific Time). If the response to your inquiry can be obtained using the web links provided below, you will not receive a reply.

Chambers copies, letters, exhibits or documents for e-filing are not accepted via this e-mail address.

=> For general procedural questions, see the federal and local rules, the court's general orders, and individual judges' standing orders, all of which can be viewed via the Rules page of the Court's website http://cand.uscourts.gov/rules Court staff members are not permitted to interpret these rules for litigants.

=> For judges' calendars visit the judges' web pages at http://www.cand.uscourts.gov/judges, or you can see all the weekly calendars from http://www.cand.uscourts.gov/judgeswkcal

=> To learn about requesting an appearance by telephone, visit the assigned judge's individual web page and consult his or her Standing Orders: http://www.cand.uscourts.gov/judges

Also, please use the Court's public web pages to find:

=> FORMS http://cand.uscourts.gov/forms

=> INFORMATION FOR THE MEDIA http://cand.uscourts.gov/media

=> INFORMATION ABOUT REPRESENTING YOURSELF http://cand.uscourts.gov/proselitigants

=> Answers to FREQUENTLY ASKED QUESTIONS (FAQs) http://cand.uscourts.gov/ctfaqs

=> E-FILING AND VIEWING ELECTRONIC DOCKETS (CM/ECF) detailed instructions and technical information http://ecf.cand.uscourts.gov

=> COURTROOM EVIDENCE-PRESENTATION TECHNOLOGY locations, descriptions and usage instructions http://cand.uscourts.gov/courtroomtech

In response to:

Could you please forward this email to Judge Ryu as soon as possible?

Qiang Wang
    to:
      dmrcrd@cand.uscourts.gov
                04/24/2014 09:51 PM
Please respond to Qiang Wang

            Show Details

Your Honor Judge Ryu,

I know it may be too late. However, is it possible to stop the settlement agreement?

First, I was in extremely insane state so that I really could not make any decisions when I communicated with my attorney. My attorney pushed me so hard (called me more than 10 times in one day) that I eventually gave up my truly believe at the end. He also said he would not represent me anymore so that I would be in a very bad situation without an attorney if I did not sign it before 2:00pm this afternoon. However, I always did not want to sign this extremely unfair agreement strongly.

Second, I strongly believed the order was a mistake and we should communicate with the Judge for reconsideration or appeal. However, my attorney said that 1) reconsideration is not possible and 2) I almost certainly have to pay about $3M, which I do not have, before filing an appeal. Is that true? If it is true, is our justice system broken? Why should I, an innocent person, have no right at all and have to suffer a huge lost because the Judge made mistakes potentially?

My heart is broken. I appreciate it very much for your time and efforts for

the settlement. However, I really did not want to have it. Thank you very
much for your kind help.

Yours Sincerely,
Qiang Wang
(650)380-4827 (cell)